The People *ex rel.* George Hunt, Attorney General,

*v.*

The Chicago and Alton Railroad Company.

*Filed at Mt. Vernon October 31, 1889.*

1. Railroads—*location of freight and passenger stations—how far subject to control.* There is no statute of the State which attempts to prescribe rules by which railway companies are to be governed in the location of their freight and passenger stations, or to confer upon the courts the power to interpose and direct as to their location.

2. The act of 1877, which requires all railway companies to build and maintain depots for the comfort of passengers and for the protection of shippers, applies only to towns and villages on their lines of road, having a population of five hundred or more, at which they are in the practice of receiving and delivering passengers and freights. The act does not compel a railway company to establish a station where none has before existed.

3. Railway companies, in the absence of statutory provisions limiting and restricting their powers, are vested with a very broad discretion in the matter of locating, constructing and operating their railways, and of locating and maintaining their freight and passenger stations. This discretion, however, is not absolute, but is subject to the condition that it must be exercised in good faith, and with a due regard to the necessities and convenience of the public.

4. It is in recognition of the paramount duty of railway companies to establish and maintain their depots at such points and in such manner as to subserve the public necessities and convenience, that it has been held by all the courts, with very few exceptions, that contracts materially limiting their power to locate and relocate their depots are against public policy, and therefore void.

5. A petition for a *mandamus* against a railway company to compel it to locate and maintain a station and depot on its line of road in a village of eighteen hundred inhabitants, on grounds there owned by the company, showed, by facts and circumstances detailed, the public importance and necessity for such station, and the refusal of the company to locate such station. The facts were admitted by demurrer: *Held,* that the petition showed a clear and undoubted right to the relief sought.

Appeal from the Circuit Court of Madison county; the Hon. Amos Watts, Judge, presiding.

Mr. GEORGE HUNT, Attorney General, for the petitioner:

A railway company may be compelled to perform its public duties by *mandamus*. Morawetz on Corp. sec. 487.

*Mandamus* is a proper action to compel a railroad company to deliver grain at a particular warehouse. *Railway Co.* v. *People,* 56 Ill. 365.

It will lie to compel a railroad company to so build its track, level and grade the streets, as to render the use of the streets and the crossings of the track convenient for the public. *Railroad Co.* v. *State,* 37 Ind. 489.

Where a railway company wrongfully took up its track, *mandamus* was held to lie to compel it to re-lay the same. *King* v. *Railway Co.* 2 B. & A. 646.

*Mandamus* will lie to compel a railway company to build a bridge. *People* v. *Railroad Co.* 70 N. Y. 569.

A law required the railroad company to establish a flag station on their railroad, at Knight's crossing, and erect there a station house at which at least two trains each way, each day, should stop, and it was held valid by the Supreme Court of Massachusetts. *Commonwealth* v. *Railroad Co.* 103 Mass. 254.

*Mandamus* will lie to compel a railroad company to perform the public duties required of it by its charter, and to compel it to erect and maintain a depot. *Railroad Co.* v. *Railroad Co.* 63 Me. 269.

Where a railway company has abandoned a portion of its line which it is its duty to maintain, *mandamus* may be sustained to compel the maintenance and operation of such portion of its line. *Railway Co.* v. *Crane,* 113 U. S. 424.

The writ of *mandamus* has always been regarded as an appropriate remedy to enforce the performance of duties by artificial bodies. *State* v. *Railroad Co.* 9 Rich. (L. R.) 247.

Corporate bodies must be compelled, in the performance of their duties, to discharge their public obligations. *Railroad Co.* v. *State,* 9 Rich. (L. R.) 247.

The case of *Union Pacific Railroad Co.* v. *Hall et al.* 91 U. S. 343, was a suit begun to compel, by *mandamus*, the railroad company to operate a certain portion of its alleged line of railroad. The writ was awarded by the circuit court, and the Supreme Court sustained the judgment.

When a railway company is required by statute to restore a railroad crossing to its former state, it may be compelled to perform this duty by *mandamus*. *Railroad Co.* v. *People*, 12 Hun, 195.

In *People* v. *New York Central and Hudson River Railroad Co.* 28 Hun, 543, the court said: The writ of *mandamus* has been awarded to compel a company to operate its road as one continuous line:—*Railroad Co.* v. *Hall*, 81 U. S. 343 ; to compel the running of passenger trains to the terminus of the road:—*State* v. *Railway Co.* 29 Conn. 538 ; to compel the company to make fences and cattle-guards:—*People* v. *Railroad Co.* 14 Hun. 373 ; 76 N. Y. 294 ; to compel it to build a bridge : —*People ex rel.* v. *Railroad Co.* 70 N. Y. 569 ; to compel it to construct its road across streams so as not to interfere with navigation:—*State* v. *Railroad Co.* 9 Rich. 247 ; to compel it to run daily trains:—*In re Railroad Co.* 1 P. & B. 667 ; to compel the delivery of grain at a particular elevator :—*Railroad Co.* v. *People*, 56 Ill. 365 ; to compel the completion of its road:—*Loan and Trust Co.* v. *Henning*, 17 Am. Law Reg. (N. S.) 266 ; to compel the grading of its track so as to make crossings convenient and useful :—*People ex rel.* v. *Railway Co.* 58 N. Y. 152 ; *Railroad Co.* v. *People*, 12 Hun, 195 ; 74 N. Y. 302 ; *Railroad Co.* v. *State*, 37 Ind. 489 ; to compel the re-establishment of an abandoned station :—*State* v. *Railroad Co.* 37 Conn. 154 ; to compel the replacement of a track taken up in violation of its charter :—*Rex* v. *Railway Co.* 2 B. & A. 646 ; to prevent the abandonment of a road once completed : — *Talcott* v. *Pine Grove*, 1 Flippin, 145 ; and to compel a company to exercise its franchise : — *People* v. *Railroad Co.* 24 N. Y. 261.

These are all express or implied obligations arising from the charters of railroad companies, but not more so than the duty to carry freight and passengers. That duty is, indeed, the *ultima ratio* of their existence—the great and sole public good for the attainment and accomplishment of which all the other powers and duties are given or imposed. It is strangely illogical to assert that the State, through the courts, may compel the performance of every step necessary to bring a corporation into a condition of readiness to do the very thing for which it is created, but is then powerless to compel the doing of the thing itself.

That it is the duty of the railroad company to furnish full accommodations to the public for the transportation of freight and passengers upon and along the entire length of its road, and that it may be compelled, by *mandamus*, if necessary, to perform that duty, we believe to be the settled law. *State* v. *Railroad Co.* 29 Conn. 546; *Railroad Co.* v. *Railroad Co.* 63 Me. 269; *People* v. *Railroad Co.* 28 Hun, 543; *People* v. *Railroad Co.* 120 Ill. 48; *Railway Co.* v. *People,* id. 206; *Vincent* v. *Railroad Co.* 49 id. 33; *Railway Co.* v. *People,* 56 id. 365.

Messrs. WISE & DAVIS, for the appellee:

The right to build the road, and the power to regulate and control the manner of using it, rest in the officers of the company, subject only to such limitations as are contained in the charter of the company or the general laws of the State.

There being no provision in the charter of the company as to where the company shall build its depots, and no law of the State regulating where railroad companies shall build depots along their lines, except "where such railroad companies are in the practice of receiving and delivering passengers and freight at all towns and villages on the line of their roads having a population of five hundred or more," (Laws 1877, p. 165,) therefore the power, the right, the discretion, as to where the

company shall build its depots, is still left in the officers of the company. *Railroad Co.* v. *Railroad Co.* 110 U. S. 667.

This case is to be distinguished from those cases where, by its charter, the company was required to construct a depot at a particular place or places, or where, by the general law of the State, the conditions were complied with which entitled the people to a depot, or where the company, having built a depot and used it, then abandoned it, and refused to stop its trains at the depot. In such cases the company either had no discretion, or, having it, exercised it, and having established the depot, must legally maintain it. In this case the discretion still rests with officers of the company as to whether they will establish a depot at Upper Alton or not. That right, power or discretion being still vested in the officers of the company, the court will not interfere with the same,—will not constitute itself a majority of the members of the board of directors, and thus out-vote those in whom is vested the right and discretion.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a petition for a mandamus, brought by the People of the State of Illinois, on the relation of the Attorney General, against the Chicago and Alton Railroad Company, to compel said company to establish and maintain a station for the receipt and discharge of passengers and freight, at Upper Alton, in Madison county. The petition alleges, that said company is a railroad corporation organized under the laws of this State, and owning, operating and controlling a line of railway in said county, known as the St. Louis, Jacksonville and Chicago Railroad, and extending from Godfrey, a station in said county, to Wann, also a station in said county, said stations being seven miles apart; that said company is a common carrier, and operates and runs upon and over said railway two passenger trains daily from south to north and one

passenger train daily from north to south, and two or more freight trains daily in each direction; that about midway between said stations there is located upon the line of said railway the town of Upper Alton, the same being an incorporated town or village containing over eighteen hundred inhabitants; that many persons require the use of said railway in order to be transported thereon as passengers to and from said town of Upper Alton, and that in said town are many merchants, manufacturers, dealers and business men who require the transportation of freight, produce and manufactures over said line of railway to and from said town of Upper Alton; "that the accommodation of the public living in and near to said town of Upper Alton, in the transportation of freight and passengers to and from said town, requires and long has required, that said Chicago and Alton Railroad Company establish a depot and freight house at said town of Upper Alton, and stop its trains, both freight and passenger, thereat, for receiving and discharging freight and passengers;" that said company has acquired and for many years has owned suitable and convenient grounds for the establishment of a depot and freight-house in the town of Upper Alton upon its line of railway, which said grounds were acquired by condemnation proceedings, for use for side-tracks, freight and passenger depots and depot grounds, and that property in said town has been bought and sold upon the belief and representation that a depot would be maintained at that place; that the town council of said town and many of the citizens of the town and vicinity requiring the use of said railway, and the Railroad and Warehouse Commission of the State of Illinois, have requested and demanded of said company that it establish and maintain upon its said grounds in said town a suitable depot and freight-house, and that it stop its trains, or a sufficient number thereof, to accommodate the public at said station, and that it receive and discharge freight and passengers thereat when requested, yet said company has wholly refused and still does refuse to main-

tain either a passenger or freight depot in said town, or to receive or discharge freight or passengers thereat.

The petition further alleges that said line of railway extends in a westerly direction from the town of Godfrey, and that there are many persons desiring to travel on said railway from said town of Upper Alton to towns on the line of said railway west of said town of Godfrey, and that persons going west are now compelled to go to Godfrey to take the same train which passes through the corporate limits of the town of Upper Alton, and the most convenient route for passengers to reach Godfrey now is, to go a distance of two and one-half or three miles to the station of Alton, and go by the way of the Chicago and Alton Railroad a distance of four or five miles to Godfrey, and there they are compelled to wait one hour for the train which such passengers might, if the prayer of the petition were granted, take in the town of Upper Alton.

The petition prays for a writ of mandamus commanding said company to establish a passenger and freight depot upon its said line of railway in said town of Upper Alton, at a suitable and convenient point to accommodate the public and all persons desiring transportation for freight or passengers to and from said town, and to stop its trains, both freight and passenger, or a sufficient number thereof, to accommodate the public, and discharge passengers and freight thereat when requested, and that, upon the final hearing, such further order might be made in the premises as to the court should seem meet and proper.

To the foregoing petition the defendant interposed a general demurrer, which was sustained by the court, and the Attorney General electing to abide by his petition, final judgment was entered in favor of the defendant. From that judgment the petitioners have appealed to this court.

There is, so far as we have been able to discover, no provision of any statute which can be appealed to in support of the prayer of the petition. Neither in the defendant's charter

nor in any other act of the General Assembly does there seem to be any attempt to prescribe the rules by which the defendant is to be governed in the location of its freight and passenger stations, or to confer upon the circuit court the power to interpose and direct as to their location. It is plain that the act of 1877, the only one to which we are referred in this connection, can have no application. That act provides : "That all railroad companies in this State carrying passengers or freight shall, and they are hereby required, to build and maintain depots for the comfort of passengers, and for the protection of shippers of freight, where such railroad companies are in the practice of receiving and delivering passengers and freight, at all towns and villages on the line of their roads having a population of five hundred or more." 2 Starr & Curtis' Stat. 1924. While it is true that Upper Alton is a town having a population of more than five hundred, it affirmatively appears that it is not a place where the defendant has been in the practice of receiving and delivering passengers and freight, and so is not within the provisions of said act. The petition seeks to have the defendant compelled to establish a station where none has heretofore existed, while the statute merely requires the erection of suitable depot buildings at places where the railway company has already located its stations, and is in the practice of receiving and discharging passengers and freight. In point of fact, the Attorney General, in his argument admits that there is no statute upon which his prayer for a mandamus can be based, the position taken by him being that, upon the facts alleged in the petition and admitted by the demurrer, the legal duty on the part of the defendant to establish a freight and passenger station on its line of railway in the town of Upper Alton arises by virtue of the principles of the common law.

It is undoubtedly the rule that railway companies, in the absence of statutory provisions limiting and restricting their powers, are vested with a very broad discretion in the matter

of locating, constructing and operating their railways, and of locating and maintaining their freight and passenger stations. This discretion, however, is not absolute, but is subject to the condition that it must be exercised in good faith, and with a due regard to the necessities and convenience of the public. Railway companies, though private corporations, are engaged in a business in which the public have an interest, and in which such companies are public servants and amenable as such. This doctrine has been repeatedly announced by this and other courts. Thus, in *Marsh* v. *F., P. & N. W. R. R. Co.* 64 Ill. 414, which was a bill for the specific performance of a contract by which the railway company agreed to locate its passenger and freight depots at a particular point in a certain town and at no other point in said town, we said: "This is not a case which concerns merely the private interests of two suitors. It is a matter where the public interest is involved. Railroad companies are incorporated by authority of law not for the promotion of mere private ends, but in view of the public good they subserve. It is the circumstance of public use which justifies the exercise on their behalf of the right of eminent domain in the taking of private property for the purpose of their construction. They have come to be almost a public necessity, the general welfare being largely dependent upon these modes of inter-communication, and the manner of carrying on their operations." In the same case, in holding that the contract there in question ought not to be specifically enforced, we further said: "Railroad companies, in order to fulfill one of the ends of their creation—the promotion of the public welfare—should be left free to establish and re-establish their depots wheresoever the accommodation of the wants of the public may require."

In *O. & M. Ry. Co.* v. *The People,* 120 Ill. 200, which was a petition for a mandamus to compel the railway company to repair, generally, a certain portion of its road, and to increase its passenger trains thereon, we said: "There can be no doubt

of the duty of a railway company to keep its road in a reasonable state of repair, and in a safe condition. Nor is there any doubt of its duty to so operate it as to afford adequate facilities for the transaction of such business as may be offered it, or at least reasonably be expected. * * * The company, however, is given, as it should be, a very large discretion in determining all questions relating to the equipment and operation of its road. Hence courts, as a general rule, will not interfere with the management of railways in these respects, except where the act sought to be enforced is specific, and the right to its performance in the manner proposed is clear and undoubted."

It is in recognition of the paramount duty of railway companies to establish and maintain their depots at such points and in such manner as to subserve the public necessities and convenience, that it has been held by all the courts, with very few exceptions, that contracts materially limiting their power to locate and re-locate their depots are against public policy and therefore void. *St. L., J. & C. R. R. Co.* v. *Mathers*, 71 Ill. 592; *St. L., J. & C. R. R. Co.* v. *Mathers*, 104 id. 257; *Bestor* v. *Wathen*, 60 id. 138; *Linder* v. *Carpenter*, 62 id. 309; *St. J. & D. C. R. R. Co.* v. *Ryan*, 11 Kan. 602; *P. R. R. Co.* v. *Seely*, 45 Mo. 212; *Holladay* v. *Pattison*, 5 Ore. 177; Taylor on Corporations, sec. 162, and authorities cited.

We have now to consider whether, in the light of the principles above laid down, a right to the relief prayed for is sufficiently shown by the petition. There can be no doubt that the act sought to be enforced—the establishment and maintenance of a freight and passenger station on the defendant's line of railway at a convenient point within the town of Upper Alton—is sufficiently specific to be enforced by mandamus, and it only remains to be seen whether the right to have its performance enforced is shown to be clear and undoubted. It should be observed that there is no controversy as to the facts,

the allegations of the petition being, for all the purposes of this appeal, conclusively admitted by the demurrer.

The petition undertakes to show the public importance and necessity of the station asked for in two ways, first, by alleging the facts and circumstances which tend to prove it, and, secondly, by directly averring it. It cannot be doubted, we think, that the facts alleged make out a clear and strong case of public necessity. They show that Upper Alton is a town of over eighteen hundred inhabitants, situated on the line of the defendant's railway, about midway between two other stations seven miles apart. The residents of the town and vicinity are shown to be possessed of at least the ordinary inclination to travel by railway, and it is averred that many of them have occasion and desire to travel by the defendant's railway between Upper Alton and other points on the line of said railway. Various manufacturing and other business enterprises are shown to be carried on within the town, creating a necessity for the use of said railway for the transportation of manufactured articles, merchandise and other freights. To avail themselves of transportation upon trains which pass by their doors, the inhabitants of Upper Alton are compelled to go and transport their freights by other conveyances to a neighboring town about three and one-half miles away. Then, as we have already said, the petition directly avers and the demurrer admits, that the accommodation of the public living in and near said town requires and long has required the establishment of a passenger and freight depot on the line of its road within said town. Unless then there is some explanation for the course pursued by the defendant which the record does not give, we cannot escape the conviction that its conduct in the premises exhibits an entire want of good faith in its efforts to perform its public functions as a common carrier, and an unwarrantable disregard of the public interests and necessities.

It cannot be admitted that the discretion vested in the defendant in the matter of establishing and maintaining its

freight and passenger stations, extends so far as to justify such manifest and admitted disregard of its duties to the public. We are of the opinion that the petition shows a clear and undoubted right on the part of the public to the establishment and maintenance of a freight and passenger station on the line of the defendant's railway in the town of Upper Alton, and it therefore follows that the demurrer to the petition should have been overruled. For the error in sustaining the demurrer, the judgment will be reversed and the cause remanded for further proceedings.

*Judgment reversed.*