THE FLORIDA CENTRAL AND PENINSULAR RAILROAD COMPANY, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, EX REL., THE MAYOR, INHABITANTS AND TOWN OF TAVARES, DEFENDANTS IN ERROR.

MANDAMUS—PARTIES TO—CONTRACTS CAN NOT BE ENFORCED BY— CONTRACTS BINDING RAILROADS TO LOCATE DEPOT AT PARTICULAR POINT VOID—EXACT LOCATION OF DEPOT BUILDINGS BY RAILROAD CAN NOT BE CONTROLLED BY.

1. When mandamus is resorted to for the purpose of enforcing a *private* right, the person interested in having the right enforced must be the relator. In such case the *relator* is considered the *real party* and *his* right to the relief must clearly appear; but where the object is the enforcement of a *public right*, the *people* are regarded as the *real party*, and the *relator* need not show that he has any legal interest in the result. It is enough that he is interested as a citizen in having the laws executed, and the duty in question enforced.

2. Mandamus never lies to enforce the performance of private contracts.

3. Contracts undertaking to obligate a railroad company to establish its depot exclusively at a particular point are void as against public policy. Such companies should be left free to establish and re-establish their depots wherever the public welfare or wants of the public may require.

4. The courts are not authorized by mandamus to so far control a railroad company's discretion in the matter of the location of its depot buildings, as to indicate, in any case, the *exact spot* of such location.

5. The *mandatory* part of an alternative writ of mandamus must conform to the case made by the *recitals* in such writ, and must not require more to be done than is justified by such recitals.

6. The range of action required of the respondent by an alternative writ of mandamus should be clearly, particularly and explicitly set forth in the mandatory part of such writ. The duty commanded should not be left to indiscriminate outside ascertainment, *dehors* the writ.

Writ of error to the Circuit Court for Lake county.

The facts in the case are stated in the opinion of the court.

*Wall & Knight*, and *John A. Henderson* for Plaintiff in Error.

*Alex. St. Clair-Abrams* for Defendant in Error

APPELLEES' BRIEF.

This is an appeal from a peremptory writ of mandamus issued from the Circuit Court of the Seventh Judicial Circuit, requiring the appellant, a railroad

484 SUPREME COURT.

F. C. & P. R. R. Co. v. State ex rel. Tavares.—Argument of Counsel.

corporation, to construct suitable stational accommodations in the town of Tavares at a particular point.

The petition for the writ recites that the petitioners, in their corporate capacity, granted to the Florida Railway & Navigation Company, to whose franchises and rights the respondent succeeded, certain rights and franchises, including right of way through and across the street and closing of certain streets on condition that the railway company constructed and maintained suitable stational accommodations in said town on a certain block of land situated therein, donated by Alex. St. Clair Abrams; that neither the F. R. & N. nor the respondent had provided any stational accommodations whatsoever; that respondent's trains were stopped in the public street, no shelter provided for travelers, and no means furnished for answering the calls of nature; that human feces were frequently deposited on the street by passengers having to use the closets of the cars; that in cold weather the only means the public have of obtaining warmth, was by bonfires in the street; in short, the petition sets up and recites a most outrageous and disgraceful condition of affairs, coupled with an allegation that the respondent had threatened, out of enmity to the town and people, to stop the cars on the edge of a marsh on the outskirts of the town, and thus further add to the wrong and injury done the relators.

All these facts are set up in the alternative writ.

The respondent first moved to quash the alternative writ.

The first two grounds for quashing the writ are clearly frivolous.

There is neither a lack of parties nor a misjoinder of parties to the relation. The mayor, inhabitants and town of Tavares act in their corporate capacity as an integral part of the State, and are the only parties competent to act.

As to the third ground, it is equally untenable. The individual inhabitants of Tavares have no right to maintain mandamus for the performance of a public duty.

A private party cannot maintain a proceeding against a corporation to enforce the performance of a public duty. Black Mountain Coal Co., vs. Lehigh Coal & Nav. Co., 50 Pa. State ; and in this case the court held that the suit could be maintained in the name of the commonwealth. So, likewise, in the case of The Northern Pacific Railway Co. vs. Territory (Wash.), 29th Am. & Eng. R. R. cases, 82. And the same position was held in the case of The People *ex rel.* vs. Chicago & Alton Ry. Co., (Ill.) 22 N. E., 857.

The fifth ground for quashing is absurd. The alternative writ does not seek to enforce a contract with Alex. St. Clair-Abrams. The allegation as to that gentlemen is merely by way of recital, to show that the railroad company owned sufficient and suitable land for depot purposes, donated by that gentleman, and that such land is most convenient for public use, and also to forestall any claim by the company that

they were without land in a convenient part of the town for depot purposes; and also to show that the construction of stational accommodation at a particular place was part of the consideration of the franchises.

The fifth ground for quashing is frivolous. The statement is merely by way of recital. The construction of buildings in an incorporated town is necessarily subject to the ordinances of the town. It is a purely legal recital.

The sixth ground for quashing is discussed in the demurrer to the return to the alternative writ.

The first part of the answer is utterly irresponsive to the alternative writ. No attempt is made in this writ to enforce any contract between Alex. St. Clair-Abrams and the Florida Railway & Navigation Company. It simply requires the respondent to perform a duty it owes to the relators and to the traveling public. That the Florida Central & Peninsular R. R. Co. is the successor of the Florida R'y. & Nav. Co., is unquestionably true. It succeeded the former company in all its rights, privileges, grants, franchises, immunities and advantages. (Sec. 10, p. 279, McClellan's Digest.) It could not operate its road in an incorporated city or town, occupying and using the streets thereof, without the consent of the municipal government, and without compensating the owner where the fee is in the abutter. Dillon on Municipal Corporations, 4th ed., vol. 2, § 703; S. sec. 8, Chap. 3595, Laws of Fla., app. Feb. 12, '85.

JANUARY TERM, 1893. 487

F. C. & P. R. R. Co. v. State ex rel. Tavares.—Argument of Counsel.

That it is the duty of the respondent to furnish reasonable stational accommodations at all its regular stopping places admits of no doubt. Both by common law and by the statutes of this State it is required to do so. Under the charter of the Florida Central & Peninsular R. R. Co., as, indeed, under the charters of all railroads in this State, power is given:

"To erect and maintain all convenient buildings, wharves, docks, stations, fixtures and machinery for the accommodation and use of their passengers and freight business." McClellan's Digest, p. 279.

This is not merely permissive. It is mandatory and imperative. In Nebraska, the railway law, similar to ours, "authorized and empowered" railway companies "to build such depots as may be necessary;" but as it did not in terms require them to do so, in the case of State ex rel. Mattoon vs. Republican Valley R. R. Co., the railroad company claimed that the law left it discretionary whether or not to build; but the Supreme Court of the State (1885) refused to sustain this claim, but on the contrary held that "the words authorized and empowered" were not merely permissive, leaving it discretionary with the railway companies, "but were obligatory."

It is the duty of a railroad company to furnish reasonable depot facilities for the accommodation of the public. St. Joseph & D. C. R. Co. vs. Ryan, 11 Kan., 602.

In the case of Hunt vs. Chicago & Alton R. Co., 40th Am. & Eng. R. R. cases, 357, it was held, revers-

ing their former decision in the said case, that it was a common law obligation for railroads to establish stations.

In the case of Herndon vs. C. M. & St. P. R. R. Co., 7 Iowa R'y. Com., 538, it was held that when a station had been established at any place by a railroad, the company was in duty bound to provide suitable accommodations for the use of passengers. And in McKinney vs. I. C. R. R. Co., 6th Iowa R'y. Com., 557, it was held "to be the duty of the railway company to provide suitable rooms, well heated and lighted, for the accommodation of waiting passengers."

In R. R. Coms. vs. Portland & O. C. R. R. Co., 63 Me., 269, the court not only affirms the general principle, but also affirms the order requiring the railroad company to construct a building particularly described by them in a locality designated by them.

The answer does not disclose when the respondent purchased the railroad, but as it does not assert any franchise to it by the municipal authorities after the purchase, the presumption therefore is that it uses these streets by virtue of the franchise granted to the Florida Railway & Navigation Co.

Under the act of 1874 railroad corporations had a right to enter upon streets, but this much of the act, even if it was constitutional, was clearly repealed by the act of 1885, and emphasized by sec. 29 of Article XVI of the Constitution of 1885, and consequently if Cutting and his associates entered into possession of the

road in May, 1889, as set forth in the answer, and formed a new corporation, they would not acquire any right to use the streets of Tavares by virtue of the new charter, and could only use it by succeeding to the franchise of the Florida Railway and Navigation Co., as set forth in the alternative writ. If, therefore, this franchise was granted on condition that stational accommodations were constructed and maintained at a particular point, such franchise must be held subject to the condition by every corporation holding, owning and operating the road.

When the control of streets and highways is delegated to a municipal corporation, it may, within limits, impose such conditions and terms upon a railroad company that it licensed to use its streets, as it deems just and expedient. The conditions of the grant, if accepted, bind the company. Elliott on Roads and Streets, p. 531.

It is not denied by the respondent that this was the condition on which the Fla. R'y & Nav. Company obtained the use of the streets. In fact, the answer does not in any way refer to this allegation in the alternative writ, and it is a well settled principle that all allegations in the alternative writ not specially denied are admitted to be true. If the respondent does not deny any material allegation of the writ, his failure is to be treated as an admission of the fact the same as if admitted in express terms. State vs. Harris, 43

Ohio St., 16. Every intendment will be made against a return which fails to answer important facts. People vs. Olive Grove, 51 Ill., 191.

A return to an alternative writ should, for the purpose of making an issue, set up a positive denial of facts stated, or should state other facts sufficient to defeat relator's right. Canova et al., 18th Fla., 512. High on Ex. rem., §460 et seq. The statement of the defense should be positive. State ex rel. Edwards, XXII Fla., 3.

The function of the return is not simply to show what would amount to a *prima facie* right in the respondent in the absence of any allegation to the contrary, but it is to show a right to refuse obedience to the writ in view of the allegations it contains. And if it does not do this, it is demurrable. The returns should, for the purpose of making an issue, set up a positive denial of facts stated, or should state other facts sufficient to defeat relator's right. Levy vs. English, 4 Ark., 65 ; Springfield vs. Coms., 10 Pick. (Mass.), 59 ; People vs. Coms., 6 Ohio, 202 ; Com. Bank of Albany vs. Canal Com., 10 Wend., 25; U. S. vs. Bayard, 5 Mackey (D. C.), 428 ; People vs. Coms., 11 How., 89 ; Society for Visitation of Sick vs. Coms., 52 Pa., 125 ; Shaw vs. Howell, 18 La. An., 195 ; Goss vs. Vermontille, C. C., 44 Mich., 319 ; 14 Am. and Eng. Ency. of Law, 230.

So much of the answer as sets up a want of funds is not a defense to the writ. It cannot defeat relator's right. There is no allegation that the respondent is insolvent ; there is no averment that he is unable to

obtain the funds. The authorities on this point are few, but those found in the books support this proposition.

In the case of Regina vs. London & N. W. R'y, it was originally held that want of funds might be shown, but subsequently in Regina vs. Eastern Counties Railway it was held, after a full discussion, that it was no objection to granting the writ that the company had not the requisite funds and could not raise them without an act of Parliament.

The next ground of defense, namely : The acquiring of the T., O. & A. railroad, as a reason why they should not furnish stational accommodations, is as preposterous as it is irrelevant. The petition for the writ was filed in January, 1891, and the alternative writ issued in March, 1891, two months before the respondent acquired the T., O. & A. road. But whether Tavares is now only a way station of defendant, or a terminal station, is no defense whatsoever, for whether the one or the other it is equally the duty of the respondent to furnish stational accommodations. The purpose of this defense appears to be to justify the intended stopping of the trains at a marsh on the edge of the town. The alternative writ sets up that the respondent had been for years and was then stopping his trains in the street at the foot of Joanna avenue, and that he threatened to stop the trains half a mile further off, at the edge of the town, on a marsh. The answer practically admits this and claims the right to do so because of having absorbed the T., O. & A.

'This is absolutely no defense. The defendant has no authority whatsoever to abandon operating the road into the town. The practical effect of this defense is to claim the right to change the route of the road through Tavares. No such right exists. There is no allegation in the answer that the requirements of sec. 21 of page 283 of McClellan's Digest have been complied with. There is no averment that the common council of Tavares have sanctioned the change by their vote, and without such sanction the change could not be made.

The only question to be considered is involved in two points:

First. Is it the duty of the defendant to furnish stational accommodations?

Second. Is the remedy by mandamus?

It must be borne in mind that the petition does not ask for the establishment of a station at Tavares, for that has been established for years, but for the construction of suitable stational accommodations, and to compel the respondent to perform its obligations under the franchise by which it operates its road in the town of Tavares.

Rohrer on Railroads, vol. 1, p. 474, says: "It is a common law duty of railroad companies to provide reasonable accommodations at their stations for passengers who are, by the manner of doing business, invited and expected to travel on their roads;" and in

support of this proposition he quotes the following
authorities: McDonald vs. The Chicago & N. W. R.
R. Co., 26 Iowa, 124; Allender vs. Chicago & R. I. &.
Pac. R. R. Co., 43 Iowa, 276; Knight vs. P. S. & P.
R. R. Co., 56 Me., 234; March vs. Concord R. R. Co.,
29 N. H., 9; Penn. R. R. Co. vs. Henderson, 51 Pa.
St., 315; Hubbard vs. N. Y. Central R. R. Co., 40 N.
Y. (1 Hand), 145; Hoffman vs. N. Y. Central, 75 N.
Y., 605; Toledo, W. & West. R'y Co. vs. Grush, 67
Ill., 262; Pittsburg & Ft. Wayne & Chicago R'y Co.
vs. Bingham, 29 Ohio St., 364; Welfare vs. London &
B. R'y Co. vs. L. R., 4 O. B., 693.

In the case of McDonald vs. The Chicago & N. W.
R. R. Co., 26 Iowa, 124, Chief Justice Dillon, who de-
livered the opinion, said: "I have no hesitation in
saying that, *without any statute requiring it*, there
is a common law duty on these corporations to provide
reasonable accommodations at stations for the passen-
gers who are invited and who are expected to travel
on their roads;" and he quotes Caterham R. R. Co. vs.
London R. R. Co., 8 Eng. C. L., 410.

In the case of Northern Pacific R. R. Co. vs. Terri-
tory (Wash.), 13 Peters, 604, the court held that "in
the absence of legislation providing other means for
regulating and controlling railroads, a court of general
jurisdiction may compel a railroad to extend to the
public proper depot and other facilities for the trans-
action of business."

In the case of the State *ex rel.* Mattoon vs. Republican Valley R'y (Neb.), 22 Am. & Eng. R'y cases, 500, the court held that "the common law, under the principle that it is the duty of a railway company to furnish reasonably sufficient and equal facilities to the public, whose servant it is, authorizes courts, by mandamus, to compel the erection of and maintenance of new stations in proper cases."

I hold, with the New York Railroad Commissioners in the case of the Rome, etc., R. R. Co., that "the obligations of railroads towards the public are the price of the franchise, and follow and cling thereto through any and all changes and ownership and management, whether such changes arise from foreclosure, lease or consolidation. Whoever seeks to avail himself of the franchise and its privileges, must fulfill these obligations precisely as the original road would be bound to do."

This position is clearly sustained by the Supreme Court of New Jersey in the case of New York vs. Greenwood Lake Co. vs. State, 32 Am. & Eng. R. R. Cases, 186.

In this case there had been two successive foreclosure sales. The corporation was known first as the Montclair R. Co.; then it became the Montclair & Greenwood Lake R. Co., and after the second sale it was reorganized as the New York & Greenwood Lake R. Co.

The same objections raised by the respondents here were raised in this case, but the New Jersey court, in affirming the judgment, said:

"The defendant has accepted a deed by the terms of which the ownership of the Montclair Co.'s property, including the Caldwell Township branch, was conveyed to the plaintiff in error. Its organization as a corporation was effected pursuant to the terms of the law, for the very purpose of taking the title to the property so purchased. It proceeded to exercise all the powers with which the charter of the original company would vest it as purchaser, so far as the new company wished to exert those powers and privileges. While it occupies this attitude it cannot ignore those duties to the public which are coupled with the enjoyment of the corporate privileges. So long as it holds this property and enjoys this franchise under a colorable title, and under corporate power which is the statutory outgrowth of the title, it must perform its duty to the public as an owner."

I cannot imagine a case more in point than this.

And in Wood's Railway Law, Vol. 2, 986, it is laid down that "if authority is given to construct a railway in the streets of a city or town, provided the company first obtains the consent of such municipal corporation, such corporation may impose reasonable conditions upon which the road shall be built."

In the case of the town of Sandy Creek, Rome, etc., R. R., the court says:

"These obligations toward the public are the price of the franchise, and follow and cling thereto through any and all changes and ownership and management, whether such changes arise from foreclosure, lease or consolidation. Whoever seeks to avail himself of the franchise and its privileges must fulfill these obligations, precisely as the original road would be bound to do." See decisions quoted, 22 Am. & Eng. R. R. Cases, 509 to 517.

That mandamus is the only remedy is well established. It is too well settled a principle of law to need argument that if the railway company owes to the public the duty of building its road, then mandamus lies to compel the performance of that as well as any other public duty. 22d Am. & Eng. R. R. Cases, 509, 507; State *ex rel.* Mattoon vs. Rep. Valley Railway, Neb.

And in the case of The Inhabitants of Cambridge and Somerville vs. Charleston Branch R. R. Co., 7 Met., 70, it was held that by accepting and acting under a charter or franchise containing conditions or obligations to be performed or kept by the company, a railroad corporation becomes bound to the fulfillment thereof to the like extent as if bound thereto by formal covenant; and in case of refusal to keep or perform the same a writ of mandamus will be awarded to compel a compliance. Rohrer on Railroads, Vol. I, 231.

Mandamus being the appropriate remedy to compel a railway company to perform the public duties required of it by its charter, the writ will go to direct a company to erect and maintain a depot, this duty being imposed upon it by law. High's Extraordinary Legal Remedies, 2d ed., §320.

The legal effect of the motion to quash and the return to the writ is an admission of the truth of all the material allegations of the alternative writ.

It remains now for this court to determine whether or not the inhabitants and town of Tavares have any rights that can be enforced against the defendants. Here is a wrong, a gross wrong perpetrated ; a violation of the conditions upon which a franchise was obtained and is now enjoyed by the appellants. If there is a remedy for the wrong it is given in the peremptory writ, and if there is a remedy the judgment of the court below should be affirmed.

ALEX. ST. CLAIR-ABRAMS,<br>Att'y for Appellee.

TAYLOR, J. :

On the 11th of March, 1891, an alternative writ of mandamus was granted and issued by the judge of the Circuit Court in and for Lake county, in the Seventh Judicial Circuit, upon the petition of the State on the relation of the mayor, inhabitants and town of Tavares against the corporate plaintiff in error, the Flor-

ida Central and Peninsular Railroad Company. Upon the denial of a motion to quash the alternative writ, and the sustaining of a demurrer to the respondent's answer, a peremptory writ was awarded, and from this judgment the respondent takes error.

The alternative writ, which contains all the recitals in the petition making application therefor, is as follows:

Whereas, The State of Florida, on the relation of the mayor, inhabitants and town of Tavares, has filed its petition for mandamus, and it appearing from the allegations of the petition that the Florida Central and Peninsular Railway Company, successors to the Florida Railway and Navigation Company, is a corporation duly chartered under the laws of the State of Florida, and doing business in said State and within the limits of the town of Tavares, and that said town of Tavares has been a regularly established station of and for said railway for more than six years past, and that when the said railroad was first constructed, Alex. St. Clair-Abrams, in his own person, gave the said railway the right of way in the said town, and also a block of land known as Shore Park, the consideration of which was that said railway company should cause to be constructed on said block of land a passenger depot, and that all passenger trains of said railway company should stop at such passenger depot; and that the inhabitants and town of Tavares assented to the use and occupancy of the streets and

JANUARY TERM, 1893..          499

F. C. '& P. R. R. Co. v. State ex rel. Tavares.—Opinion of Court.

avenues of said town by said railroad, upon the under-
standing and condition that the passenger depot would
be constructed on the block known as Shore Park—
said block being the best situated and most convenient
to the people of Tavares, and that by reason of estab-
lishing a station in said town of Tavares, and by
reason of its receipt of the land herein described, it
became, and was, and still is, the duty of said railway
company to construct a passenger depot on said block
in said town of Tavares for the proper use and ac-
commodation of the public; that the said Florida
Central and Peninsular Railway Company has failed
to construct any passenger depot whatever in said
town, but stops its trains in the public streets in said
town, exposing its passengers and the public to great
inconvenience and hardship ; that in winter while the
public await the trains of said company, the only ac-
commodation they have are bonfires lit in the public
streets, around which the public have to cluster to
obtain warmth; that no provision whatever being made
for the public, passengers in said town are compelled
to go to the water closets on the cars while they are
standing in said streets, to answer the calls of nature,
and human feces and urine are deposited on the pub-
lic streets or public highway in said town, to the great
scandal and injury of said town and the inhabitants
thereof ; that in rainy weather the public are com-
pelled to remain uncovered in the rain, or to
seek shelter in adjacent stores and buildings
because of the failure of the said railway company
to perform its duty of constructing suitable rail-

road accommodations; that the Florida Central
and Peninsular Railway Company, the successor of
the Florida Railway and Navigation Company, in the
ownership, control and operation of said railroad, still
permits the scandalous and outrageous condition of
affairs to exist in said town ; that although repeatedly
requested to construct suitable depot accommodations
in said town, it has failed and refused to construct
any whatever, and by reason of its failure so to do,
great injury, damage and inconvenience has resulted,
to the injury of the inhabitants of said town, and to
the town itself; that the Florida Central and Penin-
sular Railway Company has taken possession of and
uses, controls and claims the ownership of the lands
deeded to the Florida Railway and Navigation Com-
pany, including the block of land known as Shore
Park, deeded for a passenger depot, said block being
bounded on the east by the St. Clair-Abrams avenue,
and on the north by Tavares boulevard, but that the
said railroad company utterly refuses to construct any
depot on said block, or to construct any depot whatso-
ever in said town ; that heretofore the said railroad
company has stopped its passenger trains at the foot
of Joanna avenue in said town, where no depot accom-
modations whatsoever exist, and that the trains still
stop at the foot of said avenue, but that on the 3d of
January, 1891, the agents and employes of said rail-
road company were engaged in measuring the distance
from defendant's railroad track near a large marsh to

JANUARY TERM, 1893. 501

F. C. & P. R. R. Co. v. State ex rel. Tavares.—Opinion of Court.

the post office, and that the petitioner is informed and believes that it is the purpose and intention of said railroad company to hereafter stop its trains near the edge of said marsh ; that nearly the entire built-up portion of said town is east and north of said marsh ; that the purpose of the defendant is to further annoy and injure the inhabitants of the town of Tavares ; that if the passenger trains of defendant are stopped there it will not only inconvenience, but will inflict great injury upon said inhabitants and upon said town ; that said marsh is unhealthy and abounding in malaria ; that it presents an unsightly appearance, is forbidding in aspect, and is calculated to impress a stranger most unfavorably of said town and said inhabitants ; that it will force said inhabitants and the public to additional inconvenience and expense in going to and from the cars of defendant ; that the locality is utterly unfitted for a passenger depot, of which fact the defendant is aware ; that the block of land known as Shore Park is the best situated and most convenient for a passenger depot in said town, being only about two hundred and fifty feet from the post office and less than three hundred feet from the principal hotel, and from ten of the fourteen stores in said town, and the most accessible to nearly all of the residences in said town ; that it is the duty of the defendant as a public carrier to construct all needed depot accommodations at every one of its stations ; that the town of Tavares is an important station on

defendant's road; that said town is the county seat of said Lake county; that it is the junction of five railroads; that the defendant has a large business in said town, both of freight and passengers, and that great wrong and injury has been done to the said town and inhabitants thereof by the failure and refusal of the defendant to construct the necessary depots; that by reason thereof the inhabitants of said town and the traveling public have been exposed to sickness and to suffering, and the public health has been endangered.

It is therefore ordered that the respondents, the Florida Central and Peninsular Railway Company, proceed immediately to construct, or to have constructed, in the town of Tavares, on the block of land therein formerly known as Shore Park, and bounded on the east by St. Clair-Abrams avenue, and on the north by Tavares boulevard, a suitable depot for the accommodation of passengers, said depot to be constructed in conformity with the ordinances of said town, and to be completed by the first Monday in June, 1891, and to stop all their passenger trains at said passenger depot for the reception and delivery of passengers; or to show cause, if any they have, by the said first Monday in June, A. D. 1891, why they have not obeyed this writ. Done at chambers at De-Land, Volusia county, Florida, this 11th day of March, A. D. 1891.

"JOHN D. BROOME, Judge.'"

The respondent's motion to quash this writ was upon the following grounds :

1st. There are no sufficient parties to said relation.

2d. There is a misjoinder of parties to the relation.

3d. The inhabitants of the town of Tavares have each their individual, full and complete legal remedy for any and every grievance against the respondents.

4th. No obligation of contract between Alex. St. Clair-Abrams and the Florida Railway and Navigation Company, as charged, furnished a legal basis for redress for any breach thereof to the relators or either of them by mandamus.

5th. There is no allegation in the relation of the existence of any ordinance of the town of Tavares in reference to the mode and manner of constructing a depot to support the requirement in the alternative writ that said depot be constructed in conformity with the ordinances of the said town.

6th. There is no law of the State of Florida requiring the respondent to erect depots for the accommodation of passengers at the said station, nor for designating a place at said station where the same should be placed.

The refusal of the court to grant this motion is assigned as error. We shall confine our remarks to the points raised by this motion to quash, as a discussion of them will completely dispose of all questions involved in the case.

In support of the first ground of the motion to quash it is urged for the plaintiff in error that the proceeding having been instituted for the enforcement of a public right, no citizen, or number of citizens in their individual or collective capacity as such, would be entitled to the writ, but that the application for it should have been made by the Attorney-General. While there are many cases in several of the States that sustain this contention, yet the decided weight and preponderance of the authorities establish the following to be the correct rule as to who are proper relators in mandamus proceedings: "'When the remedy is resorted to for the purpose of enforcing a private right, the person interested in having the right enforced must be the relator. The relator (in such case) is considered the real party, and his right to the relief must clearly appear; but where the object is the enforcement of a *public* right, the people are regarded as the real party, and the relator need not show that he has any legal intereet in the result. It is enough that he is interested as a citizen in having the laws executed and the duty in question enforced." 14 Am. & Eng. Ency. of Law, 218, and authorities there cited. The above has been adopted by this conrt as being the correct rule, in McConihe, Mayor, vs. *ex rel.* McMurray, 17 Fla., 238, and in State *ex rel.* vs. Crawford, 28 Fla., 441, 10 South. Rep., 118.

The second ground on the motion to quash is, that there is a misjoinder of parties as relators. The writ was issued in the name of the State of Florida *ex re-*

*latione* "The mayor, inhabitants and town of Tavares." The contention of the respondent is, that the mayor in his official character, and the inhabitants in their individual capacity, have no such similitude of duty or interests as makes it proper to have them joined as relators. Under our laws for the incorporation of cities and towns, such towns are required, as part of the process of incorporation, to adopt a corporate name, and by such corporate name they can sue and be sued. Sections 4 and 8, pp. 246 and 247, McClellan's Digest (sections 661 and 665, Rev. Stat.). There was no necessity to have used the words "mayor and inhabitants," in this proceeding. The accurate practice would have been simply to use the corporate name of the town as being the relator; 1 Dillon's Mun. Corp. (3rd ed.), sec. 237, note 1; as it was evidently the intention of the pleader to make the municipal corporation, "town of Tavares," the relator in the case. But, the object of the proceeding being to enforce the performance of a public duty, under the rule as above announced, the State is to be considered here as the real party; and as the town of Tavares by its corporate name is included as a relator, we can see no harm that could result from treating the words "mayor and inhabitants" as immaterial surplusage, particularly as the mayor is not individually named, and no individual inhabitant is named. The suit, according to the rule, could have been instituted on the relation of any citizen of the town of Tavares, or several of its citizens could have united as relators. The town of Tavares, being a corporation of the State,

having the general power as such to sue and be sued, could also, in such a case, be the relator in its corporate capacity. The object of the proceeding being to enforce a public duty, so long as it is instituted and conducted in the name of the State, who, in such cases, is the real party, it is not a matter of much moment as to who is the relator, as that the proceedings will be quashed because of any mere technical misjoinder of parties *as relators.*

The third ground of the motion to quash contends that there is ample remedy at law for the relief sought here by mandamus. The sixth ground of the motion to quash is, that there is no law of the State of Florida requiring the respondent to erect depots for the accommodation of passengers at the said station, nor for designating the place at such station where the same shall be located. These two grounds of the motion present the question as to whether the power exists in the courts, in the absence of legislation expressly and specifically prescribing it as a legal duty to be performed by such companies, to compel railroad companies by mandamus to establish stations along their lines and to erect and maintain thereat depot buildings for freight and passengers. From the specific relief sought by the writ in this case it becomes unnecessary for us to pass upon this question, since to pass upon it with the pleadings herein constructed as they are, would be adjudicating an abstract proposition not properly presented. Without, therefore, even intimating any conclusion of our own upon the question, we deem it proper to say that there is

weighty and serious conflict in the authorities as to whether the courts can in any case compel a railroad company to establish a station, or to erect and maintain thereat depot buildings, unless there is legislation in express terms making it a legal duty that they *must* perform, in contradistinction to a *discretionary* power that they are *authorized* to carry out, or not as they see fit. Some of the authorities hold, that independently of any legislation, it is a common law duty that such companies owe to the public, and that it will be enforced by mandamus. Northern Pacific R. R. Co. vs. Territory of Washington, 3 Wash. (Ter.), 303 ; State *ex rel.* Mattoon vs. Republican Valley R. R. Co., 17 Neb., 647 ; McDonald vs. Chicago & N. W. R. R. Co., 26 Iowa, 124 ; People vs. Chicago & Alton R. R. Co., 130 Ill., 175, 40 Am. & Eng. R. R. Cases, 352. Other authorities, upon the ground that the broad discretion vested in these companies in such matters by their charters is beyond the reach of judicial interference or control, hold that the courts can not interfere unless the duty is made a clear one by express legislative enactment. People vs. New York, Lake Erie & Western R. R. Co., 104 N. Y., 58 ; Northern Pacific R. R. Co. vs. Territory of Washington, 142 U. S., 492, 12 Sup. Ct. Rep., 283, overruling 3 Wash. (Ter.), 303, *supra*. The case made, however, by the alternative writ before us does not seek merely to compel the erection of a depot building on the line of the respondent's road at some point at or near the town of Tavares, that will be reasonably subservient to the

wants and convenience of the inhabitants and business of that community, leaving the *exact spot* of its location there to the discretion necessarily vested in the company in such matters ; but the sole demand of the writ is, that the respondent company shall be compelled to erect a depot building on the *particular spot* in said town known as "Shore Park."

There is no better settled elementary principle in the law of mandamus than that the writ will never lie to enforce the performance of private contracts. Merrill on Mandamus, sec. 16, and numerous authorities there cited; High on Extraordinary Legal Remedies, sec. 25, and authorities cited; State *ex rel.* Mount Pleasant Cemetery Co. vs. Patterson, N. & N. Y. R. R. Co., 43 N. J. L., 505; Parrot vs. City of Bridgeport, 44 Conn., 180. Besides this principle, in so far as the alternative writ would seem to predicate its contention for the location of the depot upon the exact spot known as "Shore Park," upon the private contract between Alex. St. Clair-Abrams and the town of Tavares, on the one hand, and the railroad company on the other, it seems to be universally well-settled that contracts undertaking to obligate a railroad company to establish its depot exclusively at a particular point, are void as against public policy. In Marsh vs. Fairbury, Pontiac and Northwestern Railway Company, 64 Ill., 414, where the effort was made by bill in equity to enforce the specific performance of such a contract, the court says : "The location of railroad depots has much to do with the accommodation of the wants of the public. And when

once established, a change of affairs may require a change of location, in order to suit public convenience. We can not admit that an individual is entitled to call for the interference of a court of equity to compel a railroad company to locate unchangeably its depot at a particular spot to subserve the private advantages of such individual. Railroad companies, in order to fulfill one of the ends of their creation—the promotion of the public welfare—should be left free to establish and re-establish their depots wheresoever the accommodation of the wants of the public may require. To grant the relief asked for by the complainant, we would regard as against public policy."

In People *ex rel.* vs. Chicago & Alton R. R. Co., 130 Ill., 175, the court says : "It is in recognition of the paramount duty of railway companies to establish and maintain their depots at such points, and in such manner, as to subserve the public necessities and convenience, that it has been held by all the courts, with very few exceptions, that contracts materially limiting their power to locate and re-locate their depots, are against public policy, and therefore void." The same doctrine was announced by Ch. J. Shaw in Fuller vs. Dame, 18 Pick., 472; and also in St. Jos. & D. C. R. R. Co. vs. Ryan, 11 Kansas, 602; Pacific R. R. Co. vs. Seeley, 45 Mo., 212; Currie vs. Natchez, Jackson & C. R. R. Co., 61 Miss., 725. In Mobile & Ohio R. R. Co. vs. The People, 132 Ill., 559, the court says: "The location of stations for the receipt and discharge of passengers and freight at points most desirable for the convenience of travel and business be-

ing indispensable to the efficient operation of a rail-road and the enjoyment of it by the public, the rail-way company can not be compelled on the one hand, to locate stations at points where the cost of maintaining them will exceed the profiits re-sulting therefrom to the company, nor allowed, on the other hand, to locate them so far apart as to practically deny to the communities on the line of the road reasonable access to its use. A railway company can not be compelled to maintain or continue a station at a point when the welfare of the company and the community in general requires that it should be changed to some other point. A railway company can not bind itself, by contract with individuals, to locate and maintain stations at particular points, or to not locate and maintain them at other points. The company must be left free to establish and re-estab-lish its depots wherever the public welfare or wants of the public may require." The same doctrine is held in Holladay vs. Patterson, 5 Oregon, 177, in which case the court says: "A railroad company is a *quasi* public corporation, and the public have an interest in the location of their lines of road and depots. An agreement which tends to lead persons, charged with the performance of trusts or duties for the benefit of others, to violate or betray them, will not be enforced." Texas Pacific R'y Co. vs. Marshall, 136 U. S., 393.

Counsel for the relator contends, however, in his briefs filed here, that the right to compel the location of the depot on Shore Park is not predicated upon the contract between Mr. St. Clair-Abrams and the town

of Tavares, on the one hand, and the railroad company on the other, but that the allegations as to this contract contained in the writ are merely by way of recital to show that the company owned sufficient and suitable land for depot purposes, donated for such purpose, and that such land is most convenient for public use, and to forestall any claim by the company that they were without land in a convenient part of the town for depot purposes. Conceding, for the purposes of this case, that the alternative writ as framed will permit this contention, still the law will not, in our judgment, authorize the *court* to dictate the *exact spot* of the location of the depot building, or to confine its location to any particular lot or block of ground. All of the authorities *supra*, bearing upon this question, agree that a very broad discretion is vested in these companies by their charters in the matter of the location of their roads, stations, depots, etc.

We have been unable, after the most laborious search, to find a single case where any court has ever undertaken to so far encroach upon this discretion as to dictate the *exact spot* of the location of one of its depot buildings. And, though the power may lay in the courts, upon a proper case made, and without legislation expressly enjoining it as a specific legal duty, to compel railroad companies to erect depot buildings at their stations so that the convenience of the public there will be reasonably and measureably subserved, still we are perfectly satisfied from the authorities cited that the courts are not authorized to so far con-

trol the company's discretion in the matter, as to dictate, in any case, the *exact spot* of the location of one of its depot buildings; but such *exact location* must, of necessity, in every case, be left to the company's discretion to determine, limited only by the condition that it must be so located as to be reasonably subservient to the convenience of the community to be accommodated thereby. In reaching this conclusion we have not failed to consider that the language of our statute empowering railroads to build and maintain depots is *permissive* only, and not *mandatory*, but even if it were mandatory as to the duty to erect depots, our conclusion would remain the same, that the effort of this writ to dictate its *exact location* could not be sustained.

In the *mandatory* part of the alternative writ, to which the peremptory writ also conforms, the respondent is required, not only to construct a depot upon the particular lot known as "Shore Park," but to construct it "in conformity with the ordinances of said town." Neither in the relator's petition for the writ, nor in the *recitals* of the alternative writ, is there any mention whatever of the existence of any ordinance of said town prescribing any regulations as to buildings of any kind in said town. This defect in the alternative writ constituted the 5th ground of the respondent's motion to quash. It is well settled that great care, particularity and certainty is required in the preparation of the *mandatory* part of the alternative writ, and that it must conform to the case made

by the *recitals* in the writ; and must not require more to be done than is justified by the recitals. Merrill on Mandamus, sec. 260; Hartshorn vs. Assessors of Ellsworth, 60 Maine, 276; King vs. Church Trustees of St. Pancras, 1 Nev. & Perry, 507; Fisher vs. Mayor. etc., 17 W. Va., 628; State *ex rel.* Hathaway vs. State Board of Health, 103 Mo., 22; People vs. Brooks, 57 Ill., 142 ; Tapping on Mandamus, 371. Another rule applicable to mandamus that seems to be equally well settled, is: "That the range of action required of the respondent can not be left to indiscriminate outside ascertainment, nor can he be required to look *dehors* the writ to ascertain his duty." Merrill on Mandamus, sec. 260; Cross vs. W. Va., C. & P. Ry. Co., 34 W. Va., 742; Hartshorn vs. Assessors of Ellsworth, *supra*; State vs. M. & M. Ry. Co., 59 Ala., 321. The requirement of the respondent to construct its depots in conformity with the ordinances of the town of Tavares, not only overstepped the case as made by the recitals in the petition and writ, but left the respondent's duty thereunder in a state of uncertainty, to be ascertained from the town ordinance, if there was any, entirely *dehors* the writ.

The motion of the respondent to quash the alternative writ should have been granted.

The judgment of the court below is reversed, and the cause remanded for such further proceedings as shall not be inconsistent herewith.