Gilchrist County was created in 1925 by an Act of the Legislature (Chapter 11371) which placed a duty (Section 17) upon the board of public instruction of the new county to meet with the corresponding board of the old county and agree upon a plan for the assumption by the former of its proportionate share of the indebtedness of the latter. The requirement, of course, was prompted by the constitutional mandate, Article VIII, Section 3, that newly formed counties shall be liable for their share of the existing debt of the counties from which they are created, the amount to be *Page 80 
determined by the comparative assessed values of taxable property located in the new and the old counties.
Pursuant to this Act data were secured by the boards with reference to the outstanding debt and the taxable property embraced in the areas of each county, and joint meetings were held for the purpose of ascertaining the amount of indebtedness which each should assume, in consonance with the organic and statutory law. As a result of the negotiations and deliberations it was agreed, without dispute so far as the record shows, that the board of the infant county should pay ten per cent of the debt of the parent county incurred for school purposes, — one tenth of the general debt immediately and one tenth of unpaid time warrants as each of them matured. In the same year $1,000 principal and $931 interest were paid on the time warrant item and $688 interest on the part of the "General Fund indebtedness" assumed. These constituted the sole reimbursements, although about seventeen years had passed at the time the present action was instituted.
Finally the appellees obtained from the circuit court an alternative writ of mandamus commanding appellants, among whom are the members of the board of county commissioners and taxing officials as well as the debtor-board, to show cause why a peremptory writ should not issue requiring levy and collection of sufficient taxes to discharge the debt, and payment of the proceeds to the creditor-board.
After considerable pleading extending over a period of nearly a year the circuit judge issued the peremptory writ to set in motion machinery for assessment and collection of the taxes and disbursement of the moneys yielded. Incorporated in the writ was a provision that the tax should be "spread" if the appellants so petitioned the court.
Appellants have presented three questions and many phases of one of them, such as laches, failure of demand and refusal, and want of authority on the part of appellant board of public instruction, but we think the only point which merits discussion is the availability of the remedy of mandamus in the circumstances, which we have given in abridged form. *Page 81 
Certainly the Board of Public Instruction of Gilchrist County could have done no less than meet with the Board of Public Instruction of Alachua County, arrive at the definite amount owed by the former, and fix the corresponding areas of the new county and the old. When this had been done it was a mere matter of mathematical computation to arrive at the indebtedness which should be assumed on the basis of the ration of the taxable area of the new county to the taxable area of the original county.
It is plain that the comparative areas and the relative responsibility for indebtedness were fixed after mature consideration, and it is apparent that these things were done without controversy. Thereupon the obligation of the new county was set, and there arose a continuing duty on the part of the Board of Public Instruction of Gilchrist County to discharge its obligation in accordance with the agreement.
Much has been said in the briefs of counsel about the appropriateness of mandamus to coerce the performance of contracts. Unquestionably it is the general rule that this remedy may not be so employed. We held long ago that the writ would "never lie to enforce the performance of private contracts." Florida Cent. P. R. Co. v. State ex rel. Mayor, etc., of Town of Tavares, 31 Fla. 482, 13 So. 103. We are not convinced, however, that the rule is applicable in the present case because it would be necessary, in order to invoke it, first to assume that the arrangement between the counties was in fact a contract, or, as appellants have said, "a simple private contract." It will be recalled that the obligation of the new county to pay a part of the existing debt of the old county was fixed by the organic law and attached at the very moment the new county came into being. The statute, (Section 17, Chapter 11371, supra) to effectuate this provision in the Constitution made it the "duty" of the Board of Public Instruction of Gilchrist County to confer with the board of the old county and "agree with such board upon a plan . . . for the assumption . . . [of] its pro rata share of the indebtedness" of the latter. In short, the liability was fixed by organic law; the plan of payment was adopted in obedience to statutory law. We have already said the amount was *Page 82 
easily computed by establishing the property subject to taxation in the respective areas and calculating the total debt of the old county; so nothing was left to the discretion of the boards except the terms of payment.
Few, if any, characteristics or attributes of a contract are present, such as consideration, mutuality, and the like. Primarily the obligation was not one originating in contract, but imposed by law, and superimposed were the duties to determine the amount of the reimbursement, a mere mathematical computation, and to agree upon the manner of reimbursement.
Naught remains to consummate the plan adopted by legislative command to discharge the liability fixed by constitutional mandate save ministerial acts in budgeting the items and levying and collecting the taxes preliminary to paying over the moneys realized in discharge of the debt. It is our conclusion that mandamus was properly invoked to coerce the actions of officials to that end. We discover no essential difference between a mandamus in these circumstances and one to coerce official acts resulting in the retirement of bonds, a procedure long since approved.
Affirmed.
BUFORD, C. J., BROWN and SEBRING, JJ., concur.