THE PEOPLE *ex rel.* Samuel Stansbury

*v.*

THE MAYOR AND CITY COUNCIL OF CITY OF DANVILLE.

*Filed at Springfield October 27, 1893.*

1. MANDAMUS—IN THE SUPREME COURT—*practice.* Where the relator, in a proceeding by *mandamus* in this court, fails to reply to the answer of the respondent, and fails to file any further pleading or to adopt any mode for a judicial determination of the facts, as to which the parties fail to agree, and they both submit the cause on their printed briefs, this court may, perhaps, properly dismiss the petition for want of prosecution, or set aside the submission and order the parties to proceed to the formation and trial of the issues of fact tendered by the answer.

2. Where an original suit for *mandamus* is submitted on briefs, if this court retains the case without any formal issues of law or fact, the relator can have no benefit of any facts alleged in the petition which are disputed by the answer. Facts alleged by a plaintiff and denied by the defendant, unless proved, can never be the basis of a recovery. In such case, the respondent can not avail himself of any affirmative facts alleged in the answer, if he fails to obtain any rule on the relator to reply, or to move for judgment for want of a replication.

3. By submitting a case on printed briefs without any formal issues of law or fact, or taking steps for a rule on the relator to reply to the answer in a proceeding by *mandamus,* or to insist on a default, the respondent will waive a formal issue, and he will not be any more entitled to the benefit of the affirmative facts alleged by him, than if they had been formally traversed. In such case, this court will treat the answer as a demurrer to the petition.

4. MUNICIPAL CORPORATIONS—*re-districting cities into wards.* Section 4, article 4, chapter 24, relating to cities and villages, vests in city councils a discretion to re-district their cities into an appropriate number of wards, whenever, in their opinion, there is proper occasion for so doing. They are authorized, not once for all, but "from time to

time," to divide their cities into the number of wards to which they are entitled.

5.   After a city containing a population of over 10,000 and less than 30,000 has been once divided into wards, as provided by the statute, the city council may, for proper reasons, re-district the wards before the city reaches a population of 30,000.

6.   The court is not to be understood as holding that city councils may, at any time, change the boundaries of wards capriciously or without sufficient reason ; but when such council sees fit, in its legislative discretion, to change the boundaries of wards, it will be presumed, at least in the absence of clear proof to the contrary, that it acts upon some sufficient reason or necessity.   Change of population, as between the wards, may afford a sufficient ground for re-districting the wards.

7.   The first proviso of section 2, article 3, chapter 24 of the statutes, relates solely to cities having a. population of 350,000 or over, and has no application to smaller cities, nor do the terms of that proviso give evidence of any legislative policy in relation to smaller cities.

This was an original petition filed in this court for a *mandamus* against the respondents.

Mr. E. WINTER, and Messrs. LAWRENCE & LAWRENCE, for relator.

Mr. E. R. E. KIMBROUGH, and Mr. J. B. MANN, for the respondents.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This an original proceeding in this court for a mandamus. The relator, Samuel Stansbury, a voter and tax-payer in the city of Danville, represents by his petition, that for more than fifteen years, Danville has been and is incorporated as a city, under and by virtue of the General Incorporation Law of 1872 ; that prior to the year 1890 the city was composed of five wards, and had ten aldermen ; that during the early part of that year or the latter part of the year 1889, certain territory was annexed to the city, and a census of the city being taken, as provided by statute, it was found that the population of the city exceeded 10,000, and did not exceed 30,000, and there-

upon, on the 6th day of February, 1890, the city council, by ordinance duly passed, divided the territory of the city into seven wards; that at the annual April election following, aldermen were elected in those wards and have since been elected therein as provided by law, and have been qualified and acted as such.

That since the annexation above mentioned, no additional territory has been added to the city, and its population has not increased to and does not contain 30,000, yet, notwithstanding, the city council of the city, at a meeting duly convened March 19, 1892, pretended to pass an ordinance, which was then signed by the mayor, re-districting the city into seven wards, thereby changing the boundaries and formation of all the wards as formed and created by the ordinance of February 6, 1890, that is to say, that the sixth and third wards were so changed that two aldermen were required to be elected in each, and the fifth and seventh wards were so changed that no aldermen were required to be elected therein at the annual election on the third Tuesday of April, 1892; that the city council, at its meeting of March 19, 1892, had other proceedings, and thereupon a motion or resolution was offered that polling places be fixed and judges and clerks of election appointed for holding the election, and that notice of the election be given as provided by law, for electing aldermen and other officers of the city in the several wards as formed by the ordinance of February 6, 1890, but the majority of the council voted against the adoption of said motion or resolution, and the same was, by the presiding officer, declared lost; and thereupon a motion or resolution was adopted, to appoint judges and clerks of election, and places for holding elections in the wards pretended to be formed by the ordinance of March 19, 1892, and that the clerk of the city be directed to publish notices of elections to be held in those wards, for the election of aldermen and other city officers; and the city council by its officers declared its refusal to provide for and order an

9—147 ILL.

election in the wards as formed by the ordinance of February 6, 1890, on the third Tuesday of April, 1892, as provided by the statute for the holding of elections in cities organized under the act of 1872, and did not make such provision and will not do so, unless so required by the mandate of this court, by reason of which action no election has been held for aldermen in the several wards as created by the ordinance of February 6, 1890.

The petition prays for a summons against the mayor and city council of the city of Danville, and for a judgment for a peremptory writ of mandamus, commanding them to forthwith call a special election for aldermen in each of the several wards, as formed by the ordinance of February 6, 1890; to appoint judges and clerks of such election, and canvass the returns thereof, and provide by ordinance for the mode of conducting the same, and to give notice of such special election for the same length of time and in the same manner as is required in case of the regular annual election in said city.

The respondents appeared and demurred to the petition, but subsequently asked and obtained leave to withdraw their demurrer and answer. By their answer they admit that the city of Danville has been an incorporated city, under the general incorporation act of 1872, for more than fifteen years; that on the 2d day of January, 1890, certain territory was by ordinance annexed to the city. They deny that a census of the city as now constituted was taken, except the Federal census taken in June, 1890, but they say that on February 21, 1889, the city council directed the city marshal to take a census of the city as it was then constituted, and that on March 7, 1889, the marshal reported a population of 11,044; that the larger portion of what, by the ordinance of February 6, 1890, was made into the sixth and seventh wards was composed of territory annexed January 2, 1890, and that no census of the territory so annexed was taken in February, 1889.

The respondents admit that, on the 6th day of February, 1890, the city council, by ordinance, divided the territory of the city into seven wards, but they say that the population of those wards was not equal. They admit that aldermen were elected in the several wards created by that ordinance in April, 1890, and in April, 1891, but not after. They deny the allegation that no territory has been annexed to the city since the annexation of January, 1890, and allege certain proceedings commenced May 27, 1892, for the annexation to the city of territory containing 40 voters and 200 inhabitants, resulted in the annexation of such territory.

They admit that the present population of the city is less than 30,000. Also that the city council, at a meeting duly convened March 19, 1892, passed an ordinance, which was signed by the mayor, re-districting the city into seven wards, in a manner different from those formed by the ordinance of February 6, 1890, and they allege that in and by the ordinance of March 19, 1892, that of February 6, 1890, was repealed and made null and void. They admit that at the meeting of March, 19, 1892, a resolution was adopted fixing the polling places, and that judges and clerks of election were appointed by the city council, and notice of election ordered to be given, for an election of aldermen and other city officers, in the several wards as formed by the ordinance of March 19, 1892. Also, that at the same meeting, the city council, by reason of the repeal of the ordinance of February 6, 1890, did not fix places of election, appoint judges and clerks, and give notice of an election, in any of the wards as created by the ordinance of February 6, 1890. They further say that, at the regular April election in 1892, aldermen were elected in the several wards as created by the ordinance of March 19, 1892, and they have qualified and are acting as such.

The answer further alleges that after the annexation of May 27, 1892, the city council, on June 2, 1892, acting in pursuance of section 4, of article 4, of chapter 24, of the Re-

vised Statutes of Illinois, in order to correct inequalities in the several wards as created by the ordinance of March 19, 1892, as shown by the votes cast at the election in April, 1892, and in order to provide for the territory annexed, passed a further ordinance dividing the city into seven wards, as nearly equal in population, and as compact and contiguous in territory as practicable, and that the last named ordinance is the only one relating to "Wards" now in force in the city.

The answer finally gives the boundaries and situation of the city and its various parts, showing the density and probable growth of the population of each, by way of showing the equality, justice and propriety of the re-districting into wards made by the ordinance last above mentioned.

No formal issue, either of fact or of law, has been taken on this answer, and neither party has seen proper to file any further pleading or to adopt any mode for a judicial determination of the facts as to which they do not agree. On the contrary, both parties have filed their printed briefs, and have thereby submitted the cause to us for decision upon such record as is made by the petition and answer alone. In just what position the parties have thus placed themselves, or what disposition should be made of the case, in view of the recognized rules of practice in original suits commenced in this court, it is not quite easy to determine. It might perhaps be proper to dismiss the petition altogether for want of prosecution, or, to set aside the submission, and order the parties to proceed to the formation and trial of the issues of fact tendered by the answer. If we retain the case for decision as it now stands, it is plain that the relator can have no benefit of any facts alleged in the petition which are disputed by the answer. Facts alleged by a plaintiff and denied by the defendant, unless proved, can never be made the basis of a recovery. To avail himself of such facts, the relator should have accepted the issue tendered by the answer and have sustained such issues on his part by competent proof. Nor,

on the other hand, can the respondents, in our opinion, avail themselves of any of the affirmative facts alleged by them in their answer. They failed to obtain any rule on the relator to reply, or to move for the judgment to which they might have been entitled for want of a replication. By submitting the case without taking steps of that character, they have waived a formal issue, and they are no more entitled to the benefit of the affirmative facts alleged by them, than they would have been if they had been formally traversed. Such is the rule of practice at common law as administered in the Circuit Court, and we see no reason why it should not prevail here. See *Strohm* v. *Hayes,* 70 Ill. 41.

But on carefully examining the petition and answer, we are inclined to think that, after leaving out of view all facts about which there is any controversy, and confining our attention to such as are alleged on the one hand and admitted on the other, sufficient appears to fairly present the one single question which counsel have submitted by their briefs. We are therefore disposed to treat the answer to that extent as a demurrer to the petition, and to dispose of the question submitted by counsel on that basis.

The facts which stand admitted, succinctly stated, are, that the city of Danville is organized under the general law, and has a population of over 10,000, and less than 30,000; that on the 6th day of February, 1890, the city council, after having annexed certain adjacent territory, passed an ordinance dividing the city into seven wards, from each of which two aldermen were elected at the annual elections held in April, in the years 1890 and 1891; that March 19, 1892, the city council passed another ordinance, re-districting the city into seven wards, thereby materially changing the boundaries of the wards as created by the former ordinance; that at the time of passing the latter ordinance, the city council refused to take the proper steps for calling and holding the annual election in April, 1892, in the wards created by the former

ordinance, but on the contrary, ordered the election to be held and aldermen to be elected in the wards created by the ordinance then passed, and thàt such election was held accordingly in conformity with that ordinance.

The question presented by counsel in their briefs is as to the validity of the ordinance of March 19, 1892. The contention on the part of the relator is, that under the provisions of the statute in that behalf, a city having a population of over 10,000, and not exceeding 30,000, is entitled to elect fourtéen aldermen, and to be divided into seven wards, but that when the city council of such city has once divided it into seven wards, its power in that behalf is exhausted, and that it has no authority to re-district the city, so as to change the boundaries of the wards, until its population reaches 30,000. It is therefore urged that the city council, having passed the ordinance of February 6, 1890, dividing the city into seven wards, could not again re-district it, and that the ordinance of March 19, 1892, is void.

Section 2, article 3, of the act of 1872, in relation to the incorporation of cities and villages, as amended by act of June 4, 1889, provides as follows:

"The number of aldermen, when not elected by the minority representation plan, shall be as follows: In cities not exceeding 3000 inhabitants, six aldermen; exceeding 3000, but not exceeding 5000, eight aldermen; exceeding 5000 and not exceeding 10,000, ten aldermen; exceeding 10,000 and not exceeding 30,000, fourteen aldermen; and two additional aldermen for every 20,000 inhabitants over 30,000."

Then follows a proviso in relation to cities of over 350,000 inhabitants, which, so far as we can see, can have no bearing upon any question arising in this case, after which is the following proviso:

"And provided, further, if it shall appear from any census heretofore or hereafter taken, that any city has the requisite number of inhabitants to authorize it to increase the number

of aldermen, it shall be the duty of the city council thereof to proceed without delay and re-district such city in accordance with the provisions hereof, and to call and hold its next city election in accordance with such new re-districting : Provided, that at such election, the aldermen who hold over shall be considered aldermen for the new wards respectively in which their residence shall be, unless there shall be two or more aldermen who hold over in the same ward under this proviso, then, in such case, it shall be determined by lot in presence of the city council, in such manner as they shall direct, which alderman shall hold over for such ward." 3 Starr & Cur. Stat. 179.

Section 4, article 4, as amended by act of June 17, 1887, is as follows :

"The city council of any city in this State, whether organized under this act or under any special law of this State, may, from time to time, divide the city into one-half as many wards as the total number of aldermen to which the city is entitled ; and one alderman shall annually be elected in and for each ward, to hold his office for two years, or until his successor is elected and qualified. In the formation of wards, the population of each shall be as nearly equal and the ward shall be of as compact and contiguous territory, as practicable." 3 Starr & Cur. Stat. 180.

We are referred to no other statute bearing upon the question before us, and we are aware of none. Our decision then must depend upon the construction to be placed upon these legislative provisions, and especially upon the language of section 4, of article 4. That section would seem to vest in city councils a discretion to re-district their cities into an appropriate number of wards, whenever, in their opinion, there is suitable occasion for so doing. They are authorized, not once for all, but "from time to time," to divide their cities into the number of wards to which they are entitled. This

interpretation of the language used is so obvious that it must prevail, unless some cogent reason to the contrary is shown.

The main argument urged in support of the contrary interpretation is, that sound public policy requires that election districts, in which officers are to be elected to represent the body of the people, should be fixed and permanent, and should be changed only when a reason or necessity for such change exists. This may well be admitted, but it does not authorize the conclusion sought to be drawn from it. Other rules of public policy of no less importance, and in no way in conflict with the one stated, are involved, as for instance, that in the formation of wards, the population of each should be as nearly equal, and that the wards should be of as compact and contiguous territory, as practicable, and these latter rules are expressly declared and commanded by the statute itself. It was doubtless a contingency contemplated by the Legislature, that city councils, in dividing their cities into wards, might fail, in the first instance, to so make the division that each ward should be of as compact and contiguous territory as practicable, and the legislative intent seems to have been, to vest city councils with authority to remedy such defects by re-districting. So also it may be deemed to have been a contingency within the legislative contemplation, that wards, as originally constituted, may not be as nearly equal in population as practicable, or if originally made equal in that respect, that by their unequal growth, the population of the various wards may become unequal, so as to call for readjustment. By giving the city council power, from time to time, to divide the city into the requisite number of wards, the Legislature doubtless intended to authorize them to correct such inequalities in population whenever they should exist from any cause.

These grounds, and probably others, for re-districting a city into wards, or of readjusting the boundaries of the wards, may exist. We therefore can not concur with counsel for the rela-

tor, in the view that, after a city having a population of over 10,000 has been once divided into the seven wards provided by the statute, no further division can be made, and, that no changes can be made in the boundaries of the wards, until, on reaching a population of 30,000, the city becomes entitled to a larger number of aldermen. We would not be understood as holding that city councils may at any time change the boundaries of wards capriciously or without sufficient reason, but when such council sees fit to exercise its legislative discretion in that behalf, it will be presumed, at least in the absence of clear proof to the contrary, that it acts upon some sufficient reason or necessity.

If it had been the intention of the Legislature to limit the power of the municipal authorities of cities, as counsel for the relator claims, it would have been very easy to employ language clearly expressing such limitation. But the language employed empowers them to act upon the question from time to time, and in no way limits the occasions upon which they may so act, leaving the whole subject apparently to the sound legislative discretion of the city councils. Under these circumstances, we find nothing in the present record justifying the conclusion that the city council of the city of Danville, in passing the ordinance of March 19, 1892, acted without authority or in excess of its powers. The inference sought to be drawn from the first proviso of section 2, article 3, of the General Incorporation Law, can have no force in this case, as that proviso relates solely to cities having a population of 350,000 or over, and has no application to smaller cities, nor do the terms of that proviso give evidence of any legislative policy in relation to smaller cities.

As the record stands, no case is made for a peremptory writ of mandamus, and judgment therefore will be entered denying such writ.

*Mandamus denied.*