## People ex rel. Village of Burnham, Appellee, v. City of Chicago, Appellant.

### Gen. No. 14,960.

1. MANDAMUS—*what essential to award of writ.* In order to entitle a party to a writ of mandamus, he must show a clear right to the relief sought; if the right be doubtful the writ will not be awarded.

2. MANDAMUS—*when not awarded against city to supply village with water.* Mandamus should not be awarded to compel a city to supply water to a village within its territorial limits notwithstanding the abstract obligation to supply such water exists, if it appears that such village did not possess a system of waterworks and is not in a position to receive such water and the same if supplied could not be utilized.

3. MANDAMUS—*effect of resisting judgment upon petition and answer.* A respondent by resisting a motion of the petitioner for a judgment upon a petition and answer does not thereby submit the cause for final determination upon such petition and answer.

4. MANDAMUS—*proper form of judgment.* A judgment in mandamus is like a judgment in any other proceeding at law; it should be clear and complete in itself. "The respondent should not be required to look beyond the writ to ascertain the precise acts which he is required to perform."

5. MANDAMUS—*when judgment in informal.* A judgment in mandamus which directs a city to supply water to a village within its territorial limits when such village shall notify such city in writing that it is ready to receive the same, is fatally bad.

6. MANDAMUS—*when judgment in informal.* A judgment in mandamus is erroneous which is provided to become operative only when the clerk of the court shall have passed upon the sufficiency of a notice and the service thereof.

Mandamus. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed and remanded. Opinion filed February 16, 1909.

SAMUEL K. MARKMAN, for appellees.

EMIL C. WETTEN and WILLIAM D. BARGE, for appellant; EDWARD J. BRUNDAGE, of counsel.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court awarding a writ of *mandamus* on the petition of the village of Burnham against the city of Chicago.

The petition alleges that the "Act to create Sanitary Districts and to remove obstructions in the Des Plaines and Illinois Rivers," approved May 29, 1899, created and fixed the boundaries of the Sanitary District known "As the Sanitary District of the city of Chicago;" that section twenty-six of that act is as follows:

"Whenever in any such sanitary district there shall be a city, incorporated town or village, which owns a system of waterworks and supplies water from a lake or other source which will be saved and preserved from sewage pollution, by the construction of the main channel, drain ditch or outlet herein provided for, and the turning of the sewage of such city and district therein, and there shall be in such sanitary district any territory bordering on any such city, incorporated town or village within the limits of another city, incorporated town or village, which does not own any system of waterworks, at the time of the creation of such sanitary district, then upon application by the corporate authorities of such latter named city, incorporated town or village the corporate authorities of such city, incorporated town or village having such system of waterworks shall furnish water at the boundary line between such municipalities by means of its waterworks to the corporate authorities asking for the same in such quantities as may be required to supply consumers within said territory, at no greater price or charge than it charges and collects of consumers, within its limits for water furnished through meters in like large quantities."

That "An Act in relation to the Sanitary District of Chicago, to enlarge the corporate limits of said district and to provide for the navigation of the channels created by such district and to construct dams, water

wheels and other works necessary to develop and render available the power arising from the water passing through its channels and to levy taxes therefor,'' approved May 14, 1903, by section 1 prescribes the boundaries of the district.

That the village of Burnham is an incorporated village within the Sanitary District and borders on the city of Chicago; that the city of Chicago is in said Sanitary District and owns a system of waterworks and supplies water from a lake that will be and is preserved from sewerage pollution by the construction of the main channel, provided for by said act of 1899 and that the drainage canal or channel provided by said act to be built had been built.

That the village of Burnham does not own a system of waterworks and did not at the time of the creation of the Sanitary District; that the corporate authorities of the village did apply to the corporate authorities of the city of Chicago and requested the city to furnish water at the boundary line between such municipalities by means of the waterworks of the city to the said village in such quantities as the village may desire at no greater price or charge than the city charges and collects of consumers within its limits for water furnished through meters in large quantities; that since the act of 1903 the taxpayers of the village have paid into the Sanitary District in the form of taxes a large sum of money, yet the city refused and still refuses to comply with the request, by means whereof, the village is denied the right to receive water from the city in the manner provided by the statutes.

Wherefore, petitioner prays a writ of *mandamus* directed to the city and its authorities, commanding them ''forthwith to furnish water at the boundary line between the said village of Burnham and the said city of Chicago'' by means of the city's waterworks in such quantities as may be required to supply consumers in the village and at no greater price than the city

charges consumers within its limits for water furnished through meters in like large quantities.

The answer of the city of Chicago admits that the village and the city are municipal corporations under the laws of this State and both within the limits of the Sanitary District of Chicago, a corporation organized under the Act to Create Sanitary Districts and to remove obstructions in the Des Plaines and Illinois rivers, approved May 29, 1889, and the amendments thereto; that section 26 of that act is substantially as set out in petition; that the respondent owns and operates a system of waterworks by means of which it supplies its citizens with water from Lake Michigan and that the source of the supply of water used by such system has been improved and purified by the construction of the work undertaken by the Sanitary District of Chicago.

Admits that the village borders upon the city limits, and that the village does not own any system of waterworks and did not own any at the time of creation of such Sanitary District, and that the corporate authorities of the village have applied to the respondent for a supply of water to be furnished the village at the boundary line in such quantities as the village may desire, but denies the allegation that respondent has refused and still does to comply with said request.

Respondent says that the only means it possesses of supplying water to the village is by using what is commonly called the Sixty-eighth Street Pumping Station, and that the demands now made upon said station to supply water to the inhabitants and industries of the city are so great and burdensome that it would be impossible for this respondent to furnish water to the village at any time within a year from this date, and that respondent does not own or possess any other means of supplying water to the village.

Avers that the village has now no means whatever of caring for or conserving the water it demands of this respondent, and that if respondent should comply with said demand the water would run to waste, and

that to require this respondent to furnish water to said village at the present time or at any time within the next six months would simply be to waste water and put this respondent to a heavy expense and to put the taxpayers of the village of Burnham to a heavy expense without giving them any benefit.

The record shows that upon the filing of the answer the petitioner moved the court for judgment on the petition and answer, and thereupon the court entered the following judgment:

"And this cause coming on to be heard upon the petition and answer thereto and upon the motion of petitioner that judgment be entered in its favor upon the ground that the answer admits the allegations set forth in the petition to be true and the court having read the petition and answer thereto and having heard the arguments of counsel and being fully advised in the premises, hereby orders that a writ of mandamus issue out of this court to the said city of Chicago, directing it, the said city of Chicago, to furnish water at the boundary line between the village of Burnham and the said city of Chicago by means of the waterworks of the said city of Chicago, to the corporate authorities of the said village of Burnham, in such quantities as may be required to supply consumers within the said village of Burnham and that such water be supplied to the said village of Burnham by said city of Chicago at no greater price or charge than it, the said city of Chicago, charges and collects of consumers within its limits for water furnished through meters in like large quantities, when the village of Burnham notifies the city of Chicago, in writing, that it, the said village of Burnham, is ready to receive said water."

The petition avers, "That the village of Burnham does not own a system of waterworks and did not at the time of the creation of the Sanitary District."

The answer avers that the village has now no means whatever of caring for or conserving the water it de-

mands of this respondent, and that if respondent should comply with said demand the water would run to waste, etc.

In Dement et al. v. Rokker et al., 126 Ill. 174, 191, it is said: "The rule is familiar, that to entitle a party to the writ of *mandamus,* he must show a clear right to the relief sought. If the right be doubtful, the writ will not be awarded. People *ex rel* v. Trustees of Schools, 86 Ill. 613; Brokaw v. Commissioners, 118 *id.* 239; Board of Supervisors v. People, *id.* 459." The rule is stated in People v. Mayor, etc., Chicago, 51 Ill. 17, 28, as follows: "The writ is only to be awarded in a case where the party applying for it shall show a clear right to have the thing sought by it done, and by the persons or body sought to be coerced. The People v. Hatch, 33 Ill. 9."

We are of the opinion that the fact shown in the petition that the petitioner at the time of filing it had no system of waterworks, supplemented by the fact stated in the answer, which is not denied, that the petitioner had no means whatever of caring for or conserving the water when delivered shows that the petitioner at the time of filing its petition had no right to invoke the provisions of the statute. It was only a naked legal right under the statute, which the petitioner might invoke when, and only when, it had placed itself in a position to use the water when delivered, by providing some means for using and distributing it to the inhabitants of the village. We do not think that the petitioner, while it has no means whatever for caring for or using the water when delivered at the boundary line of the petitioner, has the right to a *mandamus* against the appellant to do a useless thing, which involves an expense of money large or small in amount depending upon the facts of the situation. For anything that appears in the record the petitioner may never put itself in the position where it can use and distribute the water which it is seeking by this proceeding to compel the appellant to furnish to it.

The right, to say the least, is not clear. It is doubtful.

"The writ (of *mandamus*) is never awarded to settle mere abstract rights, unaccompanied by practical or substantial benefits." North v. Trustees, etc., 137 Ill. 296.

In our opinion the answer presented an issue which the appellant was entitled to have tried in the manner provided by law, and the issue could not be tried on a motion for judgment. The respondent did not waive any right by resisting a motion for judgment. Appellant did not submit its case by resisting the motion, either actually or by implication. The case of People v. City of Danville, 147 Ill. 127, is not in point. That case was an original case in the Supreme Court, and the parties having voluntarily submitted the case to the court on printed arguments the court, although in some doubt as to what should be done with the case, considering the state of the record, treated it as a case submitted for trial on the petition and answer. That is not this case, for there was no submission of the case by appellant to the court for trial.

There was manifest error, in our opinion, in disposing of the case on motion and without a trial.

The judgment provides that the defendant—appellant—furnish the water to the petitioner when the village "notifies the city of Chicago in writing that it, the said village of Burnham, is ready to receive said water." By this judgment the city of Chicago is required to look beyond the writ to the notice which the village may serve upon it at any time. The judgment in *mandamus* is like the judgment in any other proceeding at law. It should be clear and complete in itself. "The respondent should not be required to look beyond the writ to ascertain the precise acts which he is required to perform." Encyclopedia of P. & P., Vol. 13, p. 784, and authorities there cited. The writ must follow the judgment. A writ requiring performance "according to law" is bad. In Florida Cent., etc., R. Co. v. State, 31 Fla. 513, it is said:

"The requirement of the respondent to construct its depots in conformity with the ordinance of the town of Tavares not only overstepped the case as made by the recitals of the petition and writ, but left the respondent's duty thereunder in a state of uncertainty, to be ascertained from the town ordinance, if there was any, entirely *dehors* the writ."

Another fatal objection to the judgment is, that if the provison above referred to is valid, it leaves the appellant at the mercy of the petitioner which may serve the notice when it is not ready to receive the water, and when no practical or substantial benefits would follow, and thus the city is placed in a position where it would be bound to deliver the water, upon receiving notice, without any right or power to question the truth of the notice. The petitioner, by serving the notice at any time, will be entitled to have issued a peremptory writ, which the court declined to grant according to the prayer of the petition.

Furthermore, if this construction of the judgment is correct, before the clerk may issue the writ there must be presented to him evidence that the notice required by the judgment has been served upon the respondent city of Chicago, and he must determine the sufficiency of the notice and the service thereof.

There is another construction to be placed on the judgment which is as reasonable as that suggested above, namely, that the writ shall issue at once, but the respondent is not required to obey it until the notice provided for has been served upon it. We are unable to determine which construction is correct. Either construction makes the judgment erroneous. Thus, this record illustrates the wisdom and necessity of the rule of law above quoted that the respondent should not be required to look beyond the judgment and writ to ascertain the precise acts which he is commanded to perform.

For the errors indicated the judgment of the Circuit Court is reversed and the cause is remanded.

*Reversed and remanded.*