## The Mobile and Ohio Railroad Company

### *v.*

## The People of the State of Illinois.

*Filed at Mt. Vernon April 22, 1890.*

1. Railroads—*location of passenger and freight stations—power of control.* The location of stations for the receipt and discharge of passengers and freight at points most desirable for the convenience of travel and business being indispensable to the efficient operation of a railroad and the enjoyment of it by the public, the railway company can not be compelled, on the one hand, to locate stations at points where the cost of maintaining them will exceed the profits resulting therefrom to the company, nor allowed, on the other hand, to locate them so far apart as to practically deny to the communities on the line of the road reasonable access to its use.

2. A railway company can not be compelled to maintain or continue a station at a point, when the welfare of the company and the community in general requires that it should be changed to some other point.

3. Same—*contract as to location of station—power of railway companies.* A railway company can not bind itself, by contract with individuals, to locate and maintain stations at particular points, or to not locate and maintain them at other points. The company must be left free to establish and re-establish its depots wherever the public welfare or wants of the public may require. The power of locating stations is, from its nature, a continuing one.

4. Mandamus—*generally.* A mandamus will never be awarded unless the right to the thing sought to be done by it is clearly established. If the right is doubtful the writ will be refused.

Writ of Error to the Circuit Court of Alexander county; the Hon. Oliver A. Harker, Judge, presiding.

Petition for *mandamus*, by the Attorney General, sets forth "that on or about the 16th day of February, 1885, the Cairo and St. Louis Railroad Company became incorporated under the laws of the State of Illinois, with power to build, construct, etc., a railroad from East St. Louis, in the county of St. Clair, in the State of Illinois, to the city of Cairo, in the county of Alexander, in the State of Illinois, and that said body corporate did then construct and equip said railroad from East St. Louis to the city of Cairo, and did own and operate the same from that time until the 1st day of February, 1882; that there was established by said body corporate, upon the line of its railroad, within the county of Alexander, by the corporate authorities thereof, a station known by the name of Hodges Park, at which station, at the time of constructing said railroad and during the time of operating the same, there were located and maintained a depot or station house, side-track, offices, and conveniences for receiving and discharging freight and passengers, and during all the time of the operation of said road by said company, freight and passenger trains operated by it thereon were accustomed to stop at said station and depot to receive and discharge passengers or freight, and the company was accustomed to receive and carry passengers and freight to and from said station, as public carriers, when requested so to do; that as an inducement to locate the station at said point, to locate its depot and side-tracks at that place, and make the same a stopping place for receiving and discharging passengers and freight, citizens residing near said station, and citizens of the town or village of Hodges Park, and persons owning and interested in property thereat, caused to be conveyed to said railroad company, without cost to it, certain lots and parcels of real estate, for its own use and benefit, and conveyed to it certain other real estate, to be used by it in the operation of its said railroad, and furnished it lumber and other material for the construction of its depot

buildings and station house, and furnished to the said railroad company other valuable aid and consideration therefor.

"On, to-wit, the 1st day of February, 1882, the St. Louis and Cairo Railroad Company became and was incorporated as a body corporate under the laws of the State of Illinois, for the purpose of owning and operating a railroad, and said last-named body corporate then acquired and succeeded to all the rights, privileges and franchises of the said Cairo and St. Louis Railroad Company in the operation of said railroad from East St. Louis to Cairo, as aforesaid, and became the owner of said railroad track, side-tracks, right of way, depot houses, station houses, and other property theretofore owned by said Cairo and St. Louis Railroad Company, in the operation of said line of railroad; and the St. Louis and Cairo Railroad Company, organized as aforesaid, from that time until, to-wit, the 1st day of February, A. D. 1886, continued to own and operate said line of railroad running from East St. Louis to Cairo, as aforesaid, a distance of, to-wit, one hundred and fifty-one miles, and during all said time it maintained at Hodges Park, aforesaid, a station, station house or depot, side-tracks, turn-table, offices and conveniences for receiving and discharging passengers and freight, and during all said time was accustomed to make said station a stopping place upon its said line of railroad, and to stop its trains daily at such station, and, as a public carrier, to receive and discharge thereat passengers and freight destined to or from said station at Hodges Park. Said Hodges Park, during said time, has grown to be a village of three or four hundred inhabitants, who have acquired property and engaged in business thereat, relying upon said village being and remaining a station upon said railroad. Said village contained sixty dwelling houses, two stores containing stocks of general merchandise, one drug store, two school houses, three churches, hotel, post-office, railroad depot, telegraph office and saw-mill, and contains about sixty-five families resident therein. The railroad referred to passes through said village, and the busi-

36—132 Ill.

ness houses in said village front upon said railroad, with a street or public highway lying between them and the railroad track, and the depot heretofore established was located within convenient reach of these business houses and the residents of said village.

"Relator further informs the court, that the Mobile and Ohio Railroad Company is a body corporate, organized and incorporated for the purpose of operating a railroad, and on, to-wit, the 1st day of February, 1886, made and entered into an agreement with the St. Louis and Cairo Railroad Company, under and by the terms and provisions of which agreement the said Mobile and Ohio Railroad Company undertook and became obligated to operate the said railroad, constructed, as aforesaid, from the city of East St. Louis, in St. Clair county, to the city of Cairo, in Alexander county, for the period of ninety-nine years from the date of said agreement, and the said Mobile and Ohio Railroad Company thereupon entered upon and took possession of the said St. Louis and Cairo railroad, its equipments, side-tracks, station houses, depots and other property, for the operation of said railroad, and since said time has been in the possession of said railroad property, and has operated said railroad, under said agreement, as a public carrier. Relator avers that it then and there was, and now is, the duty of said Mobile and Ohio Railroad Company to operate a sufficient number of freight and passenger trains upon and over the line of said railroad to accommodate the public, and to accommodate persons desiring the use of said railroad for the carriage of freight and passengers thereon, and it was and is the duty of the said Mobile and Ohio Railroad Company to keep and maintain, and to keep open, a station house and depot at the said station of Hodges Park at all suitable times, for the convenience and accommodation of passengers and of persons desiring the carriage of freight over said railroad, and it was and is the duty of the said railroad company to stop its freight and passenger trains daily at the said station of Hodges Park,

for the purpose of receiving and delivering passengers and freight offered to it as a public carrier, to be carried from or to said station, and it was and is its duty to maintain all the necessary side-tracks, agents, offices and conveniences at said station of Hodges Park to accommodate the public desiring the transportation of freight and passengers upon and over said line of railway, delivered to it or to be delivered by it, as a common carrier, at said station of Hodges Park.

"Your relator further shows to the court here, that said Mobile and Ohio Railroad Company operates a sufficient number of daily trains to accommodate the public if properly operated, yet, disregarding its duty which it owes to the public, as aforesaid, and without regard to the duties devolving upon it as a common carrier operating the said line of railroad, as aforesaid, said company did, on, to-wit, the 1st day of July, A. D. 1887, refuse and neglect, and from that time hitherto has refused and neglected, and still does refuse and neglect, to keep and maintain at said station of Hodges Park, a depot, station house, side-tracks, offices or agents suitable and necessary for the convenience and accommodation of persons desiring the transportation of freight or passengers from or to said station over said line of railway, and from and since said time has refused and neglected, and still does refuse and neglect, to stop its trains, either freight or passenger, or any of them, at said station of Hodges Park, either to receive or discharge freight or passengers thereat, though the said company has often been requested so to do by persons desiring the use of said railroad at said station, and citizens of Hodges Park, and by the Railroad and Warehouse Commission of the State of Illinois, and by many other persons and the public generally in that vicinity that desired and required the stoppage of said trains at such station for their proper transportation over said railroad to and from said station of Hodges Park; and said railroad company, during all said time, refused, and still does refuse, to receive or discharge passengers or freight at said station of

Hodges Park, and has removed its side-tracks therefrom and abandoned its depot and station house, and removed its agent therefrom, and has wholly deprived the citizens of Hodges Park and the surrounding country from the benefit of any station or stopping place at the said village of Hodges Park, though the needs and conveniences of the public and the citizens of said village require the stoppage of trains daily at said station to receive passengers and freight for transportation in each direction from said station, and for the discharge of passengers and freight to such station from each direction therefrom, upon the said line of railroad.

[The following amendment was made to the petition after demurrer sustained: "Relator further informs the court, that the said Mobile and Ohio Railroad Company, at the time of entering into the aforesaid agreement with the St. Louis and Cairo Railroad Company to operate said railroad, constructed, as aforesaid, from the city of East St. Louis, in the county of St. Clair, to the city of Cairo, in the county of Alexander, for the period of ninety-nine years from the date of the said agreement, which said date was the 1st day of February, A. D. 1886, had due notice of the conditions under which the depot and station at Hodges Park were located, and the granting of the above mentioned lots and parcels of land and real estate to said Cairo and St. Louis Railroad Company, in consideration of which said depot and station were to be maintained and operated by the said Cairo and St. Louis Railroad Company and its successors."]

"Wherefore petitioner prays a writ of *mandamus*, directed to the said Mobile and Ohio Railroad Company, commanding it to cause the trains operated upon and over said line of railway, or a sufficient number of them to accommodate the public and persons desiring transportation for freight or passengers to or from said station of Hodges Park, to stop daily at said station of Hodges Park, for the purpose of receiving and discharging freight and passengers, and requiring said company

to keep and maintain at said station such depots or station houses, offices, side-tracks and agents as shall be necessary for the convenience and accommodation of the public in receiving and discharging passengers and freight offered to said railroad company for transportation upon its said line of railroad to or from said station of Hodges Park, and that upon the final hearing hereof such further order may be made in the premises as to the court shall seem meet and proper."

Annexed was an affidavit verifying the petition. The answer is as follows:

"The Cairo and St. Louis Railroad Company was incorporated by and under a special act of the legislature of the State of Illinois, in the year 1865, and that under and by virtue of said act it built its railroad from East St. Louis to Cairo, in said State, in the year 1875, and that said company put up a small frame depot building or station house, and put in one or two side-tracks at said Hodges Park, and made it a station or stopping place for a part, but only a part, of its trains, passenger and freight, up to the time its railroad and other property passed into the possession, control and ownership of the St. Louis and Cairo Railroad Company,—or, rather, until it passed into the possession and control of receiver Henry W. Smithers, which was in the year 1877; but there was no contract or agreement of any kind whatever, by or under which said place became a station or stopping place, nor was any property of any kind conveyed to it, or furnished or given to it, as an inducement to the company to make the place a station or stopping place.

"Defendant further says, that in the year 1877, the said company having incurred a large mortgage and indebtedness, and being largely in arrear, the mortgage bondholders caused its railroad and other property to be placed in the possession and control of the United States Circuit Court in and for this district, which appointed said Henry W. Smithers receiver, and caused the mortgage to be foreclosed, and the entire property

to be sold, under the decree of the said United States court, on the 22d day of December, 1881, and Josiah A. Horsey and Charles J. Canda then and there became the purchasers of said property, ánd that afterward, to-wit, on the 31st day of January, 1882, said purchasers conveyed the property to the St. Louis and Cairo Railroad Company, which was organized under the general act for the incorporation of railroad companies in this State, on or about the 24th day of May, 1881.

"Defendant further says, that the said St. Louis and Cairo Railroad Company took possession of said railroad, and used and operated the same until the 1st day of February, 1886, when it leased its railroad and other property to this defendant for the period of forty-five years; and that the said St. Louis and Cairo Railroad Company, during the time it had possession and control of said railroad, stopped a part of its trains, but only a part of them, at said Hodges Park.

"Defendant further says, that long prior to the leasing aforesaid, the St. Louis and Cairo Railroad Company had decided to discontinue the station aforesaid, and to make the station or stopping place at a point or place on its road one-half a mile north of the former station house at Hodges Park, aforesaid, and that said St. Louis and Cairo Railroad Company, for some two or three years before said leasing, was accustomed to stop its passenger trains at said place one-half a mile north, as aforesaid, and this defendant has only done what the St. Louis and Cairo Railroad Company had decided to do, in view of the needs and demands of the public and of its own interests as a carrier of passengers and freight.

"Defendant further says, that since the leasing aforesaid, and long before this petition was filed, it built a depot building on its road which is just twenty-eight hundred and fifty feet north of the station house building at Hodges Park; that the present station, as located, is much more convenient to and for the public than the former one; that it is nearer to more people who have occasion to use the road, either for the purpose of

traveling or the shipment of freights, than the former one; that it is nearer and much more convenient to the farms and shippers in that vicinity, both in Alexander and Pulaski counties; that Hodges Park, which contains less than two hundred people, both white and black, and men, women and children, and which has always done very little business of any kind, is on the very edge, or southward boundary line, of a large agricultural district, lying entirely north of it, and that from Hodges Park southward there is scarcely a farm of any kind for a distance of six miles; that four-fifths of the people who have heretofore gone to the former station to take passage on trains or to ship or receive freights, have had to pass by the present station and go on southward to the former station, and return the same way; that all the public roads in that vicinity lead to the present station; that the only bridge across Cache river, for a distance of ten miles up and down the river, which is the boundary between the two counties, and which has been maintained for fifty years, is only two or three hundred yards northeastward from the present station; that the present station is much nearer to every house and foot of ground in or at Hodges Park than is the court house in Cairo to any of the railroad station houses therein, or than is the station in Murphysboro to the public square therein, and that only to a portion of the people of Hodges Park is the present station less convenient than the former one, and to everybody else who is in anywise interested, the present station is much more convenient than the former one.

"Defendant further says, that the said railroad, up to the time of the leasing aforesaid, was a narrow gauge road, the gauge thereof being three feet, and that the chief consideration for the leasing of the same was the undertaking by this defendant to rebuild said railroad and make it a standard gauge road, and that this defendant has rebuilt the road and made it a standard gauge road, and has operated the same as such for the period now of two years, and that the business of the

line has thereby been largely increased, both in its local and through traffic, and that the wants and needs of this defendant and of the public require the location of its stations at the most convenient places, and that it is neither just nor equitable that the interests of this defendant or of the public should be controlled, limited or restricted, or defendant's hands tied, by what the other companies, or either of them, may have done or omitted to do.

"Defendant denies that either it or its lessor, the St. Louis and Cairo Railroad Company, has, at any time, had knowledge of any contract, agreement or understanding, if any ever existed, between the Cairo and St. Louis Railroad Company and any one else, whereby said Hodges Park was to be or become a station on said Cairo and St. Louis railroad.

"Defendant respectfully submits, that neither the facts set forth in the petition, nor the facts as they exist outside of it, in regard to this matter, are sufficient to justify, or can justify, the court in interfering with the control and management of its railroad, or the matter of the location of stations thereon; and defendant further respectfully insists, that no such case is made in and by the petition as should require defendant to make answer to the same."

Demurrer to answer sustained; leave given to amend.

Answer amended by inserting at the end of the fifth paragraph, after the words, "more convenient than the former one," the following:

"This defendant says, that it made the change in the location of its depot building or station, as above stated, because the wants and demands of the public required the change or removal to be made, and because of the further fact, that at the present location the defendant could obtain grounds for the putting in of tracks, and the making of other necessary improvements and facilities for the transaction of the business of the defendant at that point and in that neighborhood, and that at the former location such grounds could not be obtained.

And defendant further says, the business of said Hodges Park and of the vicinity and neighborhood would not justify or require the maintenance of the two places or points as stations, and that the business of Hodges Park does not require that the station should be maintained, as formerly, for its benefit or accommodation, without regard to the wants and requirements of the neighborhood at large."

The circuit court awarded the *mandamus,* as prayed. The errors assigned question that ruling.

Messrs. Lansden & Leek, for the plaintiff in error:

The establishment, maintenance or removal of a station is to be controlled and governed by the wants and conveniences of the public who are to use the same. The evidence clearly shows that the present location is far more central and convenient to the public, and that it is not an inconvenient station to the people of Hodges Park.

Railroad companies should be left free to establish and reestablish their depots wherever the public wants may require. *Marsh* v. *Railroad Co.* 64 Ill. 414.

The writ of *mandamus* issues only in a clear case. If the right sought is doubtful or not clearly proved, it will not be granted. *People* v. *Johnson,* 100 Ill. 537; *Lavalle* v. *Soucy,* 96 id. 464; *People* v. *Crotty,* 93 id. 180; *People* v. *Commissioners,* 118 id. 239; *Supervisors* v. *People,* 118 id. 459; *Stark Co.* v. *People,* 110 id. 577.

Mr. George Hunt, Attorney General, for the People:

When the law authorizes a company to change the location of a road if it shall find it necessary, this will not authorize the company to make the change when it or its agents shall decide it to be necessary. The facts and circumstances must be shown. *Railroad Co.* v. *Greenwich,* 25 N. J. Eq. 565.

After the company has once located its road its power is exhausted, and the location can not be changed. *People* v. *Rail-*

*road Co.* 120 Ill. 48; Pierce on Railroads, 254; 2 Woods' Ry. Law, sec. 238; *Moorhead* v. *Railroad Co.* 17 Ohio St. 340; *Railroad Co.* v. *Railroad Co.* 31 N. J. L. 205; *People* v. *Railroad Co.* 45 Barb. 73; *Griffin* v. *House,* 18 Johns. 397; *Railroad Co.* v. *Devaney,* 42 Miss. 555; *Turnpike Co.* v. *Turnpike Co.* 2 Swan, 182.

The railroad company has not the absolute right to locate and re-locate its stations at will, but such location and re-location must be for the accommodation of the public. *Marsh* v. *Railroad Co.* 64 Ill. 414; *People* v. *Railroad Co.* 130 id. 175.

Mr. Justice Scholfield delivered the opinion of the Court:

Railway stations for the receipt and discharge of passengers and freight are for the profit and convenience of both the company and the public. Their location at points most desirable for the convenience of travel and business is alike indispensable to the efficient operation of the road and the enjoyment of it as a highway by the public. Necessarily, therefore, the company can not be compelled, on the one hand, to locate stations at points where the cost of maintaining them will exceed the profits resulting therefrom to the company, nor allowed, on the other hand, to locate them so far apart as to practically deny to communities on the line of the road reasonable access to its use. The duty to maintain or continue stations must, manifestly, rest upon the same principle, and a company can not therefore be compelled to maintain or continue a station at a point, when the welfare of the company and the community in general requires that it should be changed to some other point; and so we have held that a railway company can not bind itself, by contract with individuals, to locate and maintain stations at particular points, or to not locate and maintain them at other points. *Bestor* v. *Wathen,* 60 Ill. 138; *Linder* v. *Carpenter,* 62 id. 309; *Marsh* v. *Fairbury, Pontiac and Northwestern Railroad Co.* 64 id. 414;

*Snell & Co.* v. *Pells*, 113 id. 145; *St. Louis, Jacksonville and Chicago Railroad Co.* v. *Mathers*, 71 id. 592, and 104 id. 257.

The power of election in the location of the line of the railway, referred to in *People* v. *Louisville and Nashville Railroad Co.* 120 Ill. 48, results from the franchise granted by the charter to exercise the right of eminent domain, and is therefore totally different from the power of locating stations, which, from its very nature, is a continuing one.  And so we said in *Marsh* v. *Fairbury, Pontiac and Northwestern Railroad Co. supra*, where a bill had been filed for the specific performance of a contract to locate and maintain a station at a particular point : "Railroad companies, in order to fulfill one of the ends of their creation—the promotion of the public welfare—should be left to establish and re-establish their depots wherever the accommodation of the wants of the public may require."  And so, again, we said in *St. Louis, Jacksonville and Chicago Railroad Co.* v. *Mathers, supra* :  "Whenever the public convenience requires that a station on a railroad should be established at a particular point, and it can be done without detriment to the interests of the stockholders, the law authorizes it to be established there, and no contract between the board of directors and individuals can be allowed to prohibit it."  And in the very recent case of *People* v. *Chicago and Alton Railroad Co.* 130 Ill. 175, where we awarded a *mandamus* commanding the location and maintaining of a station at a point where no station had before been located and maintained, we said : "It is undoubtedly the rule that railway companies, in the absence of statutory provisions limiting and restricting their powers, are vested with a very broad discretion in the matter of locating, constructing and operating their railways, and of locating and maintaining their freight and passenger stations.  This discretion, however, is not absolute, but is subject to the condition that it must be exercised in good faith, and with a due regard to the necessities of the public."

The rule has been so often announced by this court that it is unnecessary to cite the cases, that a *mandamus* will never be awarded unless the right to have the thing done which is sought is clearly established. If the right is doubtful, the writ will be refused. The burden was on the relator to prove a case authorizing the issuing of the writ, and, in our opinion, that proof has not been made. The evidence does show that there are, of all ages and sexes, one hundred and eighty-two persons residing in Hodges Park, who are, by the change of the station, a little beyond a half a mile farther from the station; but the evidence not only fails to show that they are a majority of the people resorting to that station for business or travel, or that they furnish the majority of the freight received or shipped at that station, but it shows directly the reverse. It is not shown that there are either mining or manufacturing interests that would be accommodated by retaining the station at Hodges Park, and, so far as appears from the evidence, the business there is only that incident to the ordinary railway station in an agricultural community. The evidence shows that, with a few unimportant exceptions, the entire farming interests of the country, accessible either to Unity or to Hodges Park, are best subserved by the change made of the station. Thus, John Hodges, a native of Unity, who was sheriff of the county for ten years, and who also at one time filled the office of the county treasurer, and who was thoroughly acquainted with the country in the vicinity of Unity and Hodges Park, testified: "The new station is more convenient for the great majority of the people. The distance between the two depot buildings is twenty-eight hundred and fifty feet. I know of none to whom Hodges Park is more convenient than Unity, besides the people of Hodges Park. In going to Hodges Park to transact business, nine-tenths of the people have to pass by Unity, and so in returning." M. Easterday, who resided in Cairo, but who was a real estate agent and thoroughly familiar with the country and people in the vicinity of

Unity and Hodges Park, testified, to the effect that the chief part of the farming country was nearer to Unity than to Hodges Park, and that the roads and bridges favored travel to the former place; and he said: "Unity is as much nearer the greater portion of the improved surrounding country as the distance from Unity to Hodges Park. I know of no one, beside the people of Hodges Park, to whom the present station is less convenient than the former one. Unity is more convenient to the farmers of the community." As we understand the record, this evidence is not contradicted.

Charles Hamilton, the superintendent of respondent's road, testified, among other things: "There were two or three reasons for the removal of the station at Hodges Park to the other location. There was but a little side-track at Hodges Park, and there is one half a mile long at Unity. At Hodges Park the right of way is only fifty feet on each side of the track, and there was no room to build a side-track, for the reason that the village street is on one side and a slough on the other; and besides, there was not business enough to sustain a station at both points." This evidence is unimpeached and uncontradicted in any respect, and must therefore be accepted as true.

In *People ex rel.* v. *Louisville and Nashville Railroad Co.* and *People* v. *Chicago and Alton Railroad Co. supra,* the facts were settled by the pleadings, and left no question but that the public welfare required stations to be maintained at the points where we held they should be maintained, and there is, therefore, nothing in either of those cases that militates against our conclusion here.

The judgment of the circuit court is reversed, and the cause is remanded to that court, with direction to enter judgment for the respondent.

*Judgment reversed.*