# Horton, *et al. v.* Southern Railway Co.

*Bill to Enjoin Removal of Depot.*

(Decided May 11, 1911. 55 South. 531.)

1. *Railroads; Location of Station; Legislative Powers.*—If such requirement is not so unreasonable as to amount to confiscation of property, or destruction of the business of the carrier, the legislature may require the railroads to establish depots at particular points.

2. *Same.*—The legislature may confer on the railroad commission power to determine the location of depots and make the conclusion of the commission final, or permit its action to be reviewed by the courts.

3. *Same; Judicial Power.*—The courts may compel a carrier to perform the duties imposed upon it by law and may restrain acts in excess of the power granted.

4. *Same; Regulation; Statutory Power.*—The matter of locating depots is legislative and within the power of the railroad commission to determine, under section 243, Constitution 1901, and sections 5651, et seq. Code 1907, and hence, the court of chancery will not entertain jurisdiction of a bill by a private individual against a carrier to restrain it from moving its passenger depot from one location to another.

[Horton, et al. v. Southern Railway Co.]

5. *Same.*—One seeking to enjoin a railroad from removing its depot from one location to another in the city, on the ground that the carrier owes a duty to the public and to the complainants to continue to maintain the depot at its present site, has the burden to show both in allegation and in proof some special injury different in kind and degree from that sustained by the general public.

6. *Same; Injunction; Evidence.*—The evidence in this case examined and held not sufficient to show such irreparable injury to complainant as to warrant a temporary injunction, complainant's right not having been established by law, and the railroad commission having declined to interfere after a full hearing.

7. *Nuisance; Public Nuisance; Relief by Private Individual.*—To entitle private individuals to an injunction against the construction of buildings, or the operation of agencies performing duties to the public generally, or to a considerable part thereof, such individuals must allege that the construction or alteration complained of will be a nuisance in fact, and that they will suffer some substantial injury different in kind and degree from that suffered by the public generally.

8. *Municipal Corporations; Duty Not Enjoined by Law; Power of Courts.*—Unless the duty is enjoined by a charter or other statutory law the courts will not compel a municipality to perform such duty.

APPEAL from Colbert Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by T. B. Horton, and others, against the Southern Railway Company, to enjoin the removal of its depot from one point to another in the city of Tuscumbia. From a decree denying the temporary injunction, and dismissing the bill, complainants appeal. Affirmed.

KIRK, CARMICHAEL & RATHER, and E. W. GODBEY, for appellant. The railway company is without right to inflict injury upon the public by removing its station for the purpose of advancing its own emolument or convenience.—33 Cyc. 142; 2 Elliott R. R. 931 Ala. p. 414; *People v. L. & N. R. R. Co.* 10 N. E. Rep. 657; Purdy's Beach on Corporations, Sec. 1038; 26 Am. & Eng. Encyc. of Law, 497, 499; *State v. M. J. & K. C. R. R. Co.,* 38 So. 738-739 (Miss.); *State v. Republican Valley R. R.* 52 Am. Rep. 426; 2 Elliott on R. R., Sec. 930, p. 406; 931; *C. & A. R. Co. v. Suffern,* 21 N. E. Rep. 825; 23 Am. Eng. & Eng. Encyc. of Law, 690; *Brown V. A. &*

[Horton, et al. v. Southern Railway Co.]

*B. R. Co.,* 55 S. E. 26; 2 Elliott on R. R. Sec. 930, p. 404-5; *People v. Albany & V. R. Co.* 19 How. Prac. (N. Y.) 523; *Leverett v. Middle Ga. & A. R. Co.* 24 S. E. 156; *Coe v. L. & N. R. Co.* 3 Fed. Rep. 775; *State v. Northern Pac. R. Co.* 95 N. W. 301. The power of the railroad commission extends only to supervising the original location of a station, and not to the changing of a station.—Code, Sec. 5543. A railroad commission is not a judicial tribunal; its actions are not binding upon the courts nor upon the parties who resort to the courts.—2 Elliott on R. R. 675, 677, 682, 683; 33 Cyc. 45-46; 2 Elliott on R. R. Sec. 694; 33 Cyc. 51; 33 Cyc. 53; *State v. M. J. & K. C. R. Co.,* 38 So. 738.

The railway company cannot justify the change of this station by reason of its proposal to install a new and unauthorized main line, in order to lengthen rather than straighten said main line as provided by statute. —*Brown v. Atlantic Etc. R. Co.,* 7 Am. Eng. Ann. cases, 1032, Note; *State v. M. J. & K. C. R. Co.,* 38 So. 738; 33 Cyc. 135; 2 Elliott on R. R. Sec. 923; Code, Sec. 3484; 2 Elliott on R. R. Sec. 930, p. 407; 33 Cyc. 132; 23 Am. & Eng. Enc. of Law, p. 692; *Brown v. Atlantic Etc. R. Co.,* 7 Am. Eng. Ann. cases, p. 1034, Note. The original location is a question for legislative and administrative bodies; a change of existing conditions, interfering with the vested interests, provokes a judicial question, and there has been frequent judicial interference with changes of railway stations and tracks to the prejudice of local interests.—*People v. L. & N. R. R. Co.,* 10 N. E. 657. The following authorities hold that a writ of injunction is the remedy to prevent a threatened wrong of this kind.—33 Cyc. 136. *People v. Albany etc. R. Co.,* 19 How. Prac. 523; *People v. Albany etc. R. Co.,* 37 Barb. (N. Y.) 216; *Leverett v. Middle Ga. etc. R. Co.,* 24 S. E. Rep. 154; *State v. M. J. & K. C. R.*

*Co.*, 38 So. 732 (739) ; 22 Cyc. 897. The following authorities hold that mandamus is the remedy to compel the performance of public duties which have been abandoned; and that injunction is the remedy to prevent abandonment where the duties are still being performed but a cessation thereof threatened.—*People v. Albany etc. R. Co.*, 37 Barb. (N. Y.) 216; *Coal Co., v. Coal & Navigation Co.*, 88 Am. Dec. 538, Note; Morawetz on Corporations, Sec. 1132. Private parties may bring suits against quasi public corporations for dereliction in the performance of their duties to the public.—*U. P. R. Co. v. Hall*, 91 U. S. 343; *Brown v. Atlantic etc. R. Co.*, 7 Am. & Eng. Ann. cases, 1034; *Macon etc. R. Co. v. Gibson*, 21 Am. St. Rep. 144; Beach on Injunctions, Sec. 353; *Toledo etc. Co. v. Pennsylvania Co.*, 19 L. R. A. 393; High on Injunctions, Sec. 16; 2 Thompson on Corp. Sec. 468; *Messenger v. Pa. R. Co.*, 13 Am. Rep. 462-3; *State (Grinsfelder) v. Spokane S. R. Co.*, 41 L. R. A. 517; *First Nat. Bank of Montgomery v. Tyson*, 39 So. 561.

ALMON & ANDREWS, for appellee. The proceedings were instituted in the wrong court.—*State ex rel Mead v. Dunn*, Minor, 46; *Ex parte Jones*, 1 Ala. 15; *Travers v. Commissioners Court*, 17 Ala. 527; *Ex parte Huckabee*, 71 Ala. 421; *M. & G. R. R. Co. v. Comm. Ct.*, 97 Ala. 105; *Weatherly v. Water Works Co.*, 115 Ala. 175; *Montgomery v. Capital City Water Co.*, 92 Ala. 361; 4 Mayf. 167. There is no pretension that the court has jurisdiction because of the avoidance of a multiplicity of suits.—*Turner v. Mobile*, 135 Ala. 108; *Jones v. Hardy*, 127 Ala. 221. The questions presented are decided more nearly in *Jacquelin et al. v. Erie Ry. Co.*, 61 Atl. 18, than in any other case coming within our observation. See also in this same connection.—*Fritts et al. v.*

*D. L. & W. R. R. Co.,* 73 Atl. 92; *U. P. R. R. Co. v. Hall,* 91 U. S. 343; *State v. Hartford R. R. Co.,* 29 Conn. 538. The parties seeking this injunction were private individuals and must show an interference with some substantial right differing in kind and degree from that suffered by the general public, before they can be heard to complain.—*Baker v. S. S. & S. R. R. Co.,* 135 Ala. 552; *First Nat. Bank v. Tyson,* v33 Ala. 459; 10 Cyc. 1340; see also 30 Ala. 238; 55 Ala. 421; 87 Ala. 157; 124 Ala. 162; 138 N. Y. 179; 14 Enc. P. & P. 1145. The court had no jurisdiction of the subject-matter.—Sec. 243, Constitution 1901; Secs. 5650, et seq., Code 1907; *N. P. R. R. Co. v. Washington,* 142 U. S. 492; *People v. Railroad Co.,* 104 N. Y. 58, and authorities supra.

MAYFIELD, J.—Appellants filed this bill to enjoin the appellee railway company from removing its passenger depot from its present location to another, some 3,600 feet distant. The bill alleges that the present site is centrally located in Tuscumbia, which is a city of 4,000 or more inhabitants, and contains property assessed at a valuation of $2,000,000; that about 42,000 tickets are annually sold from this depot over the main and branch lines of the railroad; that the present depot is located very near that of the Louisville & Nashville; that it has been so located for about 65 or 70 years; that within a radius of 600 feet are located the hotel of the complainants and the principal business houses of the city, including two banks, the post office, city hall, court house, etc., and that within a radius of 1,000 feet are located the Methodist, Presbyterian, Baptist, and Episcopal churches, and within 1,500 feet is the public school building; that the defendant proposes to remove the station to a locality 3,600 feet distant, and that the newly selected and proposed site is inaccessible; that leading

to and from it are no macadamized streets nor paved sidewalks, no water mains, electric car lines, etc. The bill alleges that the station is on the present ancient main line of the Southern Railway, and that said railway proposes to remove the depot to the outskirts of the city in order to put it upon the new main line, which the bill alleges will make a circuitous detour, and not tend to strengthen the line of the railway. The bill alleges, further, that complainants' hotel, the Parshall House, is near the depot, and is a convenient stopping place for many passengers coming to and going from Tuscumbia; that both the hotel and depot have been maintained at their present sites for many years, for at least two generations; and that to change the location of the depot would entail great loss upon the complainants, and would inconvenience the traveling public. The bill was accompanied by affidavits in support of the allegations of the bill.

Upon the hearing of the application for a temporary writ of injunction, and after notice to the defendant, it filed a number of affidavits for the consideration of the court, which affidavits were to the effect that the Railroad Commission of the state had passed upon and approved the proposed change; that the Commercial Club of the city of Tuscumbia had filed a protest with the Railroad Commission against the location of the depot at the place designated in the bill; that the commission went upon the proposed site, and, in company with the complainants and others, examined the entire situation; that, after having once passed upon the question, they granted a rehearing, and after due consideration the commission unanimously entered an order declining to interfere in the matter of the proposed change. A copy of the order of the commission was made an exhibit of the affidavit used upon hearing. Upon the hearing of

the application for the temporary writ of injunction, the chancellor reached the conclusion that the chancery court was without jurisdiction and power to entertain the bill, and to grant the relief sought.

The chancellor in his opinion which accompanies his decree dismissing the bill states that the bill makes no pretense that the court's aid can be invoked under any provision in the charter under which the defendant operates its road, and that there is no common-law principle upon which the jurisdiction of the court can be rested; that the Legislature of Alabama had undertaken to regulate the business of common carriers (in this state), and to this end had created a railroad commission, upon which it had conferred power to supervise the location of passenger and freight depots, etc.; that the location of such depots should be left to the discretion of the commission; that, while the railroad company was charged with the duty of furnishing reasonably adequate and suitable facilities, this matter was referred to the Railroad Commission by the Legislature, and that the proposed change had met with the approval of said commission; that the chancery court should not interfere unless it clearly appeared that there was gross and arbitrary abuse of the authority. The chancellor further expressed the opinion that, if the court's aid could be invoked in such a case as made by the bill, it should be by a public proceeding in the name of the state, and not by individuals; otherwise there would be no end to the litigation, as every individual affected in the slightest degree by the change of the site of the depot could maintain a suit. It is said on high authority that it is a part of the common-law duty of railroad companies, which are common carriers, to establish and maintain stations and depots along their roads sufficient to furnish reasonable facili-

ties for the use of their lines by the public who may desire to use the same as travelers or shippers.—*State v. Republican Valley R. R.*, 17 Neb. 647, 24 N. W. 329, 52 Am. Rep. 424; *Id.*, 18 Neb. 512, 26 N. W. 205.

There is no doubt that the Legislature may require such railroads as are common carriers to establish depots or stations at particular points, if not so unreasonable as to amount to a confiscation of the property or destruction of the business of the railroad.—*Commonwealth v. Eastern Co.*, 103 Mass. 254, 258, 4 Am. Rep. 555.

. The Legislature may also confer this power upon a railroad commission which may determine whether stations shall be located at certain places, and their conclusions may be made final, or they may be made reviewable by the courts.—*Com'rs v. Portland Railroad Co.*, 63 Me. 269, 18 Am. Rep. 208. The court of New York, in the case of *People v. N. Y. R. R. Co.*, 104 N. Y. 66, 9 N. E. 856, Am. Rep. 484, refused to grant a mandamus to compel a railroad company to construct and maintain a station and warehouse sufficient to accommodate a town of more than a thousand inhabitants, and which supplied a large passenger and freight business to the road, although the Railroad Commission of New York had recommended such station and warehouse. The court in that case said: "A plainer case could hardly be presented of a deliberate and intentional disregard of the public interests and the accommodation of the public. No doubt, as the respondent urges, the court may by mandamus also act in certain cases affecting corporate matters, but only when the duty concerned is specific and plainly imposed upon the corporation. Such is not the case before us. The grievance complained of is an obvious one, but the burden of removing it can be imposed upon the defendant only by legislation."

[Horton, et al. v. Southern Railway Co.]

The Supreme Court of Nebraska held that it was a part of the common-law duty of a railroad company as a common carrier of passengers to maintain a station at a town of 1,500 people, such as would afford reasonable facilities to the people, and issued a mandamus to compel the location of the station.—*State v. Republican Valley Co.*, 17 Neb. 647, 24 N. W. 329, 52 Am. Rep. 424; *Id.*, 18 Neb. 512, 26 N. W. 205. The Illinois courts also have gone a long way towards holding that mandamus will lie at the suit of the state to compel railroads to locate stations where they are needed, and are almost in line with the Nebraska court.—*People v. Louisville & Nashville Railroad Co.*, 120 Ill. 48, 10 N. E. 657; *Vincent et al. v. C. & A. R. R. Co.*, 49 Ill 33; *People v. Chicago Ry. Co.*, 130 Ill. 175, 22 N. E. 857; *Mobile Ry. Co. v. People*, 132 Ill. 559, 571, 24 N. E. 643, 22 Am. St. Rep. 556. The above case (reported in 130 Ill.) held that mandamus would lie to compel the relocation of a station at a county seat, where there had once been a station, on the ground that being once located there the railroad company had no authority to change it; but these cases are all reviewed, criticised, and some of them disapproved by the Supreme Court of the United States in the case of *Northern Pacific Ry. Co. v. Washington Territory*, 142 U. S. 492, 12 Sup. Ct. 283, 35 L. Ed. 1092. The case last referred to was similar to the one at bar. In that case the railroad when first constructed stopped its trains at Yakima City, which was the county seat; but it built no depot there, and subsequently the company obtained lands four miles north of the town, and was interested in building up a city on its own land and established a passenger depot at this new site, and ceased to stop its trains at Yakima City. The courts were applied to in that case to compel the railroad company to make Yakima City a station.

Before the litigation terminated, the new city rapidly increased and the old one retrograded. The new one became the larger, and was subsequently made the county seat. The case finally went to the Supreme Court of the United States, where it was held by a divided court that mandamus could not issue in such case; that courts could not attempt the supervision of railroads; and that the remedy in such cases should be sought in proper legislation.

The case nearest in point to the one in hand which we have been able to find, and probably as near as could be found, is that of *Jacquelin et al. v. Erie Ry. Co.*, 69 N. J. Eq. 432, 61 Atl. 18. In most of the cases we have examined mandamus seems to have been the remedy pursued to compel the location, or to prevent the removal, of stations and depots; but in the Jacquelin Case the remedy sought was by injunction, as in the case at bar, and the bill was filed by property owners and citizens of the town to prevent the removal of the station and depot, and practically the same condition of facts was alleged in that bill to exist that we have in the case at bar, and the damages and inconveniences there alleged to be the necessary consequence of the change in the location of the depot were similar to those here set up. Consequently there can be no doubt that it is an authority in point, unless the Constitution and statutes regulating railroads in the two states or those pertaining to pleading and practice render it not an authority. The case seems to have been fully and well considered, and a great number of authorities are cited in support of its holdings. The bill in the New Jersey case was originally filed by one Jacquelin, and it was subsequently amended by the addition of a number of other parties as complainants, including a great number of business firms and associations, and the borough of Orville. The

bill sought an injunction to restrain the railroad company from discontinuing the use of its station at Hobokus, and require it to retain and maintain a station at that point. The bill alleged that the station at that point was the only station within the limits of the borough of Orville, and that the nearest stations thereto were those of Undercliff (about four-fifths of a mile distant) and Waldick (about a mile and a half distant). In this respect the case corresponds very closely with the one at bar, where the proposed new site is some 3,600 feet from the present location. Affidavits accompanied the bill in that case, and others by the respondent railroad company were filed upon the hearing—all bearing upon the propriety of the proposed change of site of the station, and showing a similar state of affairs to that made by the bill and affidavits under consideration. In that case, as in this, the exact question for determination was whether a court of equity could grant a preliminary injunction, requiring a railroad company to continue to furnish railroad facilities at a station which the company desired to abandon; there being no charter or statutory requirements as to continuing the station at such point.

One point of difference in regard to the law of the two states; it being decided in that case that there were no statutes in New Jersey defining the duties of railroads with respect to the establishment and maintenance of such railroad stations, whereas there are numerous statutes of that nature in this state. The contention was made in that case, as in this, that the equity of the bill depended upon either of two theories—that the complainants had a legal right which, under peculiar circumstances, the court of equity would protect, or that they had an equitable right which the court would respect. The equitable right is based on the contention

that the railroad company by its conduct had induced the complainants and other people to purchase property, build homes, and establish businesses at or near the station; that it had advertised the place as one where the public would be served, and that it would be inequitable to permit the railroad company to decline to make good its implied promise to continue to so maintain the station. The court in that case held that, if any such right as this existed, it was a legal, and not an equitable, right, and that the court of equity had no jurisdiction to enforce specifically such implied contract; that a court of equity could not specifically enforce such contract if it were an express instead of an implied one, because such an agreement would be against public policy; and that the railroad company and such contracting parties would have to be remitted to a court of law to a suit for damages, rather than to a court of equity for a specific enforcement of such contract, upon which proposition many authorities were cited. In that case the court declined to consider the question whether or not the -complainants were the proper parties to enforce the specific performance of such contract or duty, if it existed, and was capable of such performance; or whether such suit should be brought by the Attorney General on behalf of the state as a necessary party complainant. It will be observed that, while the relief here sought is in form to restrain by prevention, it is in effect to compel performance; that is, to compel the railroad company to continue to use its present station. While railroads are quasi public corporations, and may be compelled by courts to perform the duties enjoined upon them by law, the difficult question presented is, Can a court compel a railroad company which is a common carrier to perform a duty which is not enjoined upon it by its charter nor by any other express statutory provision?

[Horton, et al. v. Southern Railway Co.]

The law is well settled that a public corporation, such as a municipal one, cannot be compelled to perform any duty that is not enjoined upon it by its charter or other statutory law. It has been held by the great majority of the courts, in both England and America, state and federal, that the subject of regulating the operation of railroads and common carriers, in both the matter of locating and maintaining depots, warehouses, and like accommodations for passengers and patrons, and that of schedules, speed, and mode of operating trains, etc., is a question for the legislative department of the government, and not for the judicial; that the courts cannot originate provisions with respect thereto, but can only interpret and apply to these subjects the law as it may have been ordained by the legislative departments.

It is certainly true, however, that, wherever there is a positive duty imposed by law upon such common carriers, the courts have the power to enforce its performance or discharge, and to restrain actions in excess of the powers and rights granted to such public service corporations. It must be conceded, however, that the authorities are in conflict upon the proposition as to the power of courts to interfere with, or to direct or control, the management and operation of a railroad as to the location and maintenance of depots, stations, etc., and the line of its road, where there is no statutory or legislative requirement upon the subject. As has been before pointed out, the decisions of the courts of Nebraska and Illinois seem to hold that the courts have power and jurisdiction to interfere with the management and operation of railroads in these matters, and certainly so, in extreme cases, where the public would otherwise suffer irreparable loss. But, as held by the New Jersey court and by the Supreme Court of the United States, the correctness of these decisions may well be doubted; and

the decisions of the court of Illinois upon the subject are very much in conflict with one another. It has, however, become the declared policy of a great number of states that this question should be dealt with by the Legislature, and many of them have constitutional provisions relative to conferring powers and enjoining duties upon such public service corporations in these matters which so much concern the public. These provisions require that the Legislature shall provide by law for the construction and operation of railroads; and in pursuance of these powers (and sometimes without them) the Legislatures of the several states have provided by statute for the settlement of many questions which arise between the railroad companies and the public; and such is the law in this state.

Section 243 of our Constitution of 1901 provides, among other things, that the power and authority of regulating railroad freight and passenger tariffs, the locating and building of passenger and freight depots, the correcting of abuses, preventing of unjust discriminations, etc., are conferred upon the Legislature, whose duty it shall be to pass laws from time to time for such regulation. The Constitution makers could, of course, have committed this subject to the courts, but they have seen fit to commit it to the Legislature. The Legislature, for the evident purpose of carrying out these constitutional provisions, has passed a great number of statutes upon this subject, which have been repeatedly changed, at nearly every session, and sometimes completely twice revised at one session of the Legislature. But in the main, as to the power and authority of regulating railroad passenger and freight tariffs, of locating depots, of correcting abuses, of preventing unjust discriminations and extortions, and of requiring reasonable rates, etc., the Legislature has conferred these

powers and duties upon a railroad commission created by act of the Legislature, and provided for their enforcement. A part of these statutes are now embraced in various sections of the Code. Those provisions pertinent for reference here are as follows: Section 5651 of the Code of 1907 provides that the Railroad Commission is charged with the duty of supervising, regulating, and controlling all transportation companies doing business in this state in all matters relating to the performance of public duties, and of correcting abuses by such companies, and requiring them to establish and maintain all such public service conveniences as may be reasonable and just. Section 5652 of the Code, almost copying the constitutional provision above referred to, provides that common carriers shall be subject at all times to the control of the Legislature, which may regulate freight and passenger tariffs, the locating of depots, etc., correct abuses, prevent unjust discriminations, and establish and regulate reasonable and just rates of passenger and freight tariff. Section 5667 of the Code provides for a complaint which any person or association may make against a transportation company as to any service in connection therewith in any respect unreasonable, unjustly discriminatory, or inadequate, such complaint to be made to the commission, which may notify the transportation company of the same; and 10 days after such notice the commission may proceed to investigate the complaint; the conduct of such investigation being provided for in other sections of the Code.

We are of the opinion that it is the declared policy of this state to commit the regulation of matters such as are complained of in this bill to the Legislature, and that the Legislature, in turn, has committed it to the Railroad Commission, which has power to act in the premises, and is the proper and appropriate tribunal in

which to right such wrongs, and that for a chancery court to attempt to determine which of two sites in a certain town a railroad depot should be located on or maintained upon would be usurping the functions and powers which the Legislature and Constitution have seen fit to repose in another tribunal, which is given legislative, judicial, and administrative functions necessary to perform the duties enjoined upon it by law. In the case of *Nashville, Chattanooga and St. Louis Railway v. State,* 137 Ala. 439, 34 South. 401, this court, speaking through Dowdell, J., its present Chief Justice, said: "The demurrer to the bill raised the question as to the jurisdiction and power of the court to entertain the bill and grant the relief sought. There is no pretense of authority for the filing of the bill under any provision of the charter of the defendant company. We must therefore look to the statutes alone or authority of the Railroad Commission to make the order, and for the jurisdiction of the court to entertain a bill for its enforcement. It seems that there is no common-law principle upon which such jurisdiction can be vested. While a corporation which is quasi public in its character and owes duties to the citizens which the court can and will in appropriate remedies compel it to respect, yet the location of stations and the building of depots is not within such duties when not imposed by the Legislature." The bill in that case was filed to compel the railroad company to obey an order of the Railroad Commission, requiring it to locate a station and erect a depot, suitable for the accommodation of passengers and the handling of freight, in the town of Guntersville, the county seat of Marshall. It was shown in this case that the depot had been located just outside of Guntersville, in the town of Wyeth, and that the depot was maintained for the two towns jointly. What was

[Horton, et al. v. Southern Railway Co.]

said in that case is in part applicable to the facts made by the bill in this case. This court further held in that case that the statutes of this state at that time conferred nothing more than advisory functions upon the Railroad Commission, with no power to compel performance; it being authorized only to notify the railroad company what the commission deemed to be necessary changes, and to report such action to the Governor, that such authority to advise the company and report to the Governor fell far short of power to order and compel the performance of their advice. But since the rendition of this decision these statutes have been several times revised and amended by the Legislature, and much more extended powers are now conferred, and more important duties enjoined, upon the Railroad Commission. It now has authority to act and require where before it had authority only to suggest and advise, and report its action to the Governor. It now has power to hear and determine the question of locating and maintaining depots and stations; and the Legislature has gone very far toward conferring upon it the powers and duties reposed in the Legislature by the Constitution. These additional powers and duties were no doubt suggested to the Legislature by the decision of this court in the case above referred to, and, whatever defects the statutes may yet have, they have not those above mentioned. It was also declared by this court in the case of *Page v. L. & N. R. R. Co.,* 129 Ala. 237, 29 South. 676, (which was quoted with approval in the case of *N. C. & St. L. Ry. v. State, supra*) that there was no common-law duty resting upon a railroad company to establish and maintain comfortable waiting rooms at its stations. While this is not the exact question now under consideration, it is one closely akin. It was further held in Page's Case that no such duty exists unless im-

posed by the charter of the railroad company, or by statute or some other legislative authority.

It has been repeatedly decided by this court that, to entitle a complainant to an injunction against the construction or operation of certain buildings or agencies, it was incumbent upon the complainant to show by averment that such construction or operation would be a nuisance in fact, and that the complainant would suffer some special injury, different in kind and degree from that sustained by the general public. This is particularly true where the duty is one that is assumed toward the public generally, or toward a considerable portion thereof in the aggregate.—*Baker v. Selma Railway Co.*, 130 Ala. 474, 30 South. 464; *First Nat. Bank v. Tyson*, 133 Ala. 459, 32 South. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46.

While the complainants in this case do not seek to enjoin the construction or erection of any structure or business which constitutes a nuisance, yet they do seek to restrain the defendant from removing its depot, and allege that the company owes a duty to the public as well as to the plaintiffs to continue to maintain the depot at its present site. But we can see no reason why the rule should be different as to the rights of a party to maintain the injunction in either case. The mere fact that it is a nuisance in the one case and not in the other is not the test, but it is rather whether the duty owed by the respondent is to the public, and is one, the performance or discharge of which the public could and should require of the respondent.

It was shown upon the hearing of the application for temporary injunction, by the affidavits and exhibits introduced in evidence on the part of the complainants that irreparable injury would ensue if the preliminary injunction did not issue; and we confess that the bill

and these affidavits make a very strong case that injury will result to the complainants and other residents of the town of Tuscumbia, which cannot be easily repaired, if the railroad company does not continue to maintain its depot at its present location, and this showing would be a very strong appeal to a court of equity if such court had jurisdiction to confer the relief requested. But, on the other hand, the railroad company insists, and has introduced affidavits and exhibits to show, that it will continue to maintain reasonable railroad facilities for the accommodation of the people of Tuscumbia and the public generally, and that a change of sites will be beneficial and not detrimental to the interests of the people of the town as alleged in the bill. It further appears from this record that all these matters have been twice heard by the Railroad Commission, and that it has declined to interfere with the railroad company in consummating the proposed change in the location of its depot in Tuscumbia.

Therefore, notwithstanding the strong showing made by the bill, it is evident that the complainants' rights have not been established at law, nor are their rights clear and indisputable in such sense that a court of equity would grant relief by injunction. Under all the authorities above referred to, we are constrained to hold in this case that the decree of the chancellor dismissing the bill and denying the temporary injunction sought was proper. To hold otherwise and grant the relief prayed would be to hold that the chancery courts of this state may locate the stations and depots of the railroads at such points as the court shall determine best, or, at least, to hold that the railroad companies cannot discontinue stations at points once established, when it is decided by such court that it would be better for the public or some individual that the station be not removed.

[Guesnard, et al. v. Guesnard.]

It is unnecessary for us to decide in this case whether injunction or mandamus would be the proper remedy, and we merely refer to the case of *Jacquelin et al. v. Erie Co., supra,* which fully discusses the question.

It follows that the decree of the chancellor should be affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., concur.